## UNITED STATES BANKRUPTCY COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re: | Chapter 11 |
| HAWKER BEECHCRAFT, INC., *et al.*, | Case No. 12-11873 (SMB) |
| Debtors. | (Jointly Administered) |
| | **Related Doc. Entries: 20, 53** |

## FINAL ORDER (I) AUTHORIZING THE DEBTORS TO (A) OBTAIN POSTPETITION FINANCING PURSUANT TO 11 U.S.C. §§ 105, 361, 362, 364(c), 364(d)(1), AND 364(e) AND (B) UTILIZE CASH COLLATERAL OF PREPETITION SECURED ENTITIES PURSUANT TO 11 U.S.C. § 363, (II) GRANTING ADEQUATE PROTECTION TO PREPETITION SECURED LENDERS PURSUANT TO 11 U.S.C. §§ 361, 362, 363 AND 364, AND (III) GRANTING RELATED RELIEF

Upon the motion of Hawker Beechcraft, Inc. and its affiliated debtors, as debtors-in-possession (collectively, the "Debtors")[1] in the above-captioned chapter 11 cases (collectively, the "Chapter 11 Cases"), dated May 3, 2012 (the "Motion"), for entry of the Interim Order (as defined below) and a final order (this "Final Order"), under sections 105, 361, 362, 363(c), 363(e), 364(c), 364(d)(1) and 364(e) of title 11 of the United States Code, 11 U.S.C. §§ 101-1532 (as amended, the "Bankruptcy Code"), and Rules 2002, 4001, 6004 and 9014 of the Federal Rules of Bankruptcy Procedure (as amended, the "Bankruptcy Rules") and Rule 4001-2 of the Local Rules of the United States Bankruptcy Court for the Southern District of New York (the "Local Rules"), seeking, among other things:

(i)    authorization for Hawker Beechcraft Acquisition Company, LLC, as debtor and debtor-in-possession ("Borrower") to obtain post-petition financing in the form of delayed draw term loans (the "Delayed Draw Loans") drawn under, and letters of credit (the

---

[1] All defined terms shall have the meaning ascribed to them in DIP Credit Agreement (as defined below) unless otherwise defined herein.

"Letters of Credit") issued under, a debtor-in-possession credit facility (collectively, the "DIP Facility") and for certain affiliates of the Borrower (each a "Guarantor" and, collectively, the "Guarantors"),[2] as debtors and debtors-in-possession, to guarantee unconditionally Borrower's obligations in connection with the DIP Facility, in each case pursuant to the terms of the Interim Order, this Final Order and the DIP Loan Documents (as defined below), the foregoing transactions to include:

(a)    a first lien, superpriority, delayed draw term loan facility providing for the borrowing of term loans from time to time in accordance with the Approved Budget (as defined below) in an aggregate maximum principal amount of up to $400 million (the "Delayed Draw Facility"), a portion of which amount may be applied to provide cash collateral for the issuance of cash collateralized Letters of Credit with an aggregate maximum face amount of up to $75 million, of which up to $300 million of Delayed Draw Loans was available upon entry of the Interim Order, a portion of which amount was authorized to be applied to provide cash collateral for the issuance of Letters of Credit;

(b)    the repayment in full of all Senior Tranche Obligations (as defined in the Prepetition Credit Agreement (as defined below)) with the proceeds of Delayed Draw Loans (the "Senior Tranche Repayment"), which repayment was effectuated pursuant to the Interim Order on May 11, 2012;

(c)    the cash collateralization of all Letters of Credit in an amount equal to 104% of the face amount thereof with the proceeds of Delayed Draw Loans; and

---

[2]  The Guarantors are: Hawker Beechcraft, Inc., Hawker Beechcraft Corporation, Hawker Beechcraft Holding, Inc., Arkansas Aerospace, Inc., Hawker Beechcraft Quality Support Company, Hawker Beechcraft Global Customer Support Corporation, Hawker Beechcraft International Delivery Corporation, Hawker Beechcraft Regional Offices, Inc., Beechcraft Aviation Company, Hawker Beechcraft Finance Corporation, Beechcraft Notes Company and Hawker Beechcraft Defense Company, LLC, and HBC LLC.

(d) the conversion of all Senior Tranche Letters of Credit (as defined in the Prepetition Credit Agreement) to Letters of Credit, and the conversion of the Senior Tranche LC Funds (as defined in the Prepetition Credit Agreement) to DIP Facility LC Funds (as defined in the DIP Credit Agreement) securing Letters of Credit in accordance with the terms of the DIP Credit Agreement (collectively, the "Letter of Credit Conversion"), which Letter of Credit Conversion was effectuated pursuant to the Interim Order on May 7, 2012; and

(ii)    authorization for the Debtors to execute and enter into that certain Debtor-In-Possession Credit Agreement, by and among the Borrower, the Guarantors, Credit Suisse AG, Cayman Islands Branch ("CS") as administrative agent and collateral agent (in such capacity, the "DIP Agent") for itself, the lenders party thereto (the "DIP Lenders") and the DIP Issuing Bank (as defined below), CS, as issuing bank (in such capacity, the "DIP Issuing Bank," and together with the DIP Agent and the DIP Lenders, the "DIP Secured Parties") and the DIP Lenders, dated as of May 7, 2012 (as the same may be amended, restated, supplemented or otherwise modified from time to time pursuant to the terms thereof, the "DIP Credit Agreement"), a copy of which is attached hereto as Exhibit A, and any related documents and instruments delivered pursuant to or in connection therewith (collectively, the "DIP Loan Documents"), and authorization for the Debtors to perform such other and further acts as may be required in connection with the DIP Loan Documents;

(iii)    authorization for the Debtors' use of proceeds of the DIP Facility and cash collateral, as such term is defined in section 363(a) of the Bankruptcy Code (as so defined, but excluding any cash collateral subject to prior Non-Primed Liens (as defined below), if any,

3

"Cash Collateral"), and the collection and application of Cash Collateral, pursuant to the terms and conditions set forth in the Interim Order, this Final Order and the DIP Credit Agreement;

(iv)    the grant of (i) valid, enforceable, non-avoidable and fully perfected first priority priming liens on and senior security interests in (including liens pursuant to sections 364(c)(2) and 364(c)(3) of the Bankruptcy Code and priming liens pursuant to section 364(d) of the Bankruptcy Code) all DIP Collateral (as defined below) to the DIP Agent, for the benefit of itself and the other DIP Secured Parties, to secure all obligations of the Debtors under and with respect to the DIP Facility (collectively, the "DIP Obligations"), and (ii) superpriority claims (including a superpriority administrative claim pursuant to section 364(c)(1) of the Bankruptcy Code) to the DIP Agent, for the benefit of itself and the DIP Lenders, having recourse to all prepetition and postpetition property of the Debtors' estates, now owned or hereafter acquired, (other than Avoidance Actions (as defined herein)) whether received by judgment, settlement or otherwise and any Debtors' rights under section 506(c) of the Bankruptcy Code and the proceeds thereof;

(v)    the grant of adequate protection to the Prepetition Secured Parties (as defined below) under that certain Credit Agreement, dated as of March 26, 2007 (as amended, restated, supplemented or otherwise modified from time to time and in effect on the date hereof, the "Prepetition Credit Agreement"), among the Borrower, the Guarantors, the Specified Subsidiaries (as defined below), the Lenders from time to time party thereto (the "Prepetition Lenders"), CS, as Issuing Bank (in such capacity, the "Prepetition Issuing Bank"), LC Facility Issuing Bank (in such capacity, the "Prepetition LC Facility Issuing Bank") and Senior Tranche Issuing Bank (in such capacity, the "Senior Tranche Issuing Bank"), and CS, as administrative agent and collateral agent (in such capacities, the "Prepetition Agent", and together with the

4

Prepetition Lenders, the Prepetition Issuing Bank, the Prepetition LC Facility Issuing Bank, the Senior Tranche Issuing Bank and each counterparty to any Hedge Agreement or a Cash Management Agreement with the Borrower or any of its Subsidiaries the obligations under which constitute Secured Hedging Obligations or Secured Cash Management Obligations (as each such term is defined in the Prepetition Credit Agreement) (the "Prepetition Secured Parties")), on account of (i) the Debtors' use of Cash Collateral and (ii) the priming of the liens and security interests held by the Prepetition Agent on behalf of itself and the Prepetition Secured Parties under the Prepetition Credit Agreement and all security agreements, aircraft security agreements, pledge agreements, mortgages, deeds of trust and other security and ancillary documents executed by the Borrower or any Guarantor in favor of the Prepetition Agent (on behalf of itself and the Prepetition Secured Parties) in connection therewith (collectively, the "Prepetition Collateral Documents" and, together with the Prepetition Credit Agreement, the "Prepetition Loan Documents"), as more fully set forth in this Final Order;

(vi)     the waiver by the Debtors of any right to surcharge the Prepetition Collateral (as defined below) pursuant to section 506(c) of the Bankruptcy Code or other applicable law, and the grant of rights under section 552(b) of the Bankruptcy Code;

(vii)     pursuant to Bankruptcy Rule 4001, an interim hearing on the Motion for this Court to consider entry of the Interim Order, which, among other things, (i) authorized Borrower to obtain from the DIP Lenders under the Delayed Draw Facility up to $300 million of Delayed Draw Loans, a portion of which was authorized to be applied to provide cash collateral for the issuance of Letters of Credit, on an interim basis, (ii) authorized the Debtors to effectuate the Senior Tranche Repayment, (iii) authorized the Debtors to effectuate the Letter of Credit

5

Conversion, (iv) authorized the Guarantors to guaranty the DIP Obligations, (v) authorized the

Debtors' use of the Cash Collateral; and (vi) granted the liens and claims provided for herein;

(viii)   a final hearing on the Motion no later than the thirtieth (30th) day

following the entry of the Interim Order to consider entry of this Final Order granting the relief

requested in the Motion on a final basis;

(ix)   modification of the automatic stay imposed under section 362 of the

Bankruptcy Code to the extent necessary to permit the Debtors, the DIP Lenders, the DIP Agent,

the Prepetition Lenders, and the Prepetition Agent to implement the terms of the Interim Order

and this Final Order; and

(x)   waiver of any applicable stay (including under Bankruptcy Rule 6004) and

provision for immediate effectiveness of the Interim Order and this Final Order.

This Court having held an interim hearing on May 4, 2012 (the "Interim

Hearing") and a final hearing on May 30, 2012 (the "Final Hearing") to consider the Motion and

the relief requested therein; and after considering all of the pleadings filed with this Court; and

after considering all of the evidence presented on the record at the Interim Hearing and the Final

Hearing, and having overruled all unresolved objections to the relief requested in the Motion;

having found that, under the circumstances, due and sufficient notice of the Motion, the Interim

Hearing, entry of the Interim Order, and the Final Hearing was provided by the Debtors in

accordance with Bankruptcy Rules 2002, 4001(b), 4001(c), 4001(d) and 9014 and all applicable

Local Rules as set forth in the Interim Order and in Paragraph E below; and it appearing that

approval of the relief requested in the Motion on a final basis is fair and reasonable and in the

best interests of the Debtors, their creditors, their estates and all parties in interest, is a sound and

prudent exercise of the Debtors' business judgment, and is essential for the continued operation

6

of the Debtors' business and the preservation of the value of the Debtors' assets; and after due deliberation and consideration, and good and sufficient cause appearing therefor:

**BASED ON THE RECORD MADE AT THE HEARINGS, THE COURT FINDS AS FOLLOWS:**

      A.    **Petition Date**. On May 3, 2012 (the "Petition Date"), each of the Debtors filed a voluntary petition (collectively, the "Petitions") with this Court commencing the Chapter 11 Cases. The Debtors are continuing to operate their respective businesses and manage their respective properties as debtors in possession pursuant to sections 1107 and 1108 of the Bankruptcy Code.

      B.    **Jurisdiction; Venue**. This Court has subject matter jurisdiction to consider this matter pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b). The statutory predicates for the relief sought herein are sections 105, 361, 362, 363, 364, 503, 507 and 552 of the Bankruptcy Code and Bankruptcy Rules 2002, 4001(b) and 9014 and Local Rule 4001-2. Venue of the Chapter 11 Cases and the Motion in this District is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

      C.    **Appointment of Committee**. On May 11, 2012, the Office of the United States Trustee for the Southern District of New York (the "U.S. Trustee") appointed a statutory committee of unsecured creditors (the "Committee") in the Chapter 11 Cases pursuant to section 1102(a) of the Bankruptcy Code.

      D.    **Interim Order**. Based on the Motion, the Interim Hearing, and all relevant pleadings filed with this Court, the Court approved the Debtors' entry into and performance under the DIP Credit Agreement and the other DIP Loan Documents on an interim basis as well as all other requested interim relief and entered on May 7, 2012, the *Interim Order*

*(I) Authorizing the Debtors to (A) Obtain Postpetition Financing Pursuant to 11 U.S.C. §§ 105, 361, 362, 364(c), 364(d)(1) and 364(e) and (B) Utilize Cash Collateral of Prepetition Secured Entities Pursuant to 11 U.S.C. § 363, (II) Granting Adequate Protection to Prepetition Secured Lenders Pursuant to 11 U.S.C. §§ 361, 362, 363 and 364, (III) Scheduling a Final Hearing Pursuant to Bankruptcy Rules 4001(b) and 4001(c), and (IV) Granting Related Relief* (the "Interim Order"). [Doc. # 53]

E.    **Notice**.    The Final Hearing was held pursuant to the authorization of Bankruptcy Rule 4001.  Notice of the Final Hearing and the relief requested in the Motion has been provided by the Debtors, whether by facsimile, electronic mail, overnight courier or hand delivery, on May 17, 2012, to certain parties in interest, including: (a) the Office of the United States Trustee for the Southern District of New York, (b) the 30 largest non-insider unsecured creditors of the Debtors on a consolidated basis, (c) CS, as DIP Agent and Prepetition Agent, (d) Sidley Austin LLP, as counsel to the DIP Agent and the Prepetition Agent (in such capacities, "Agents' Counsel"), (e) Wachtell, Lipton, Rosen & Katz, as counsel to an ad hoc group of Prepetition Lenders, (f) Brown Rudnick LLP, as counsel to an ad hoc group of Prepetition Lenders, (g) Milbank, Tweed, Hadley & McCloy LLP, as counsel to an ad hoc group of prepetition senior bondholders, (h) the Pension Benefit Guaranty Corporation (the "PBGC"), (i) the Internal Revenue Service, (j) the Securities and Exchange Commission and (k) the United States Attorney for the Southern District of New York.  Under the circumstances, such notice of the Motion, the relief requested therein and the Final Hearing complies with Bankruptcy Rule 4001(b), (c) and (d) and the Local Rules.

F.      **Debtors' Stipulations With Respect to Prepetition Obligations**.

Subject to the limitations thereon described below in Paragraph 16 the Debtors hereby admit,

acknowledge, agree and stipulate that (collectively, the "Debtors' Stipulations"):

(i)     As of the Petition Date, the Debtors were truly and justly indebted

to the Prepetition Secured Parties pursuant to the Prepetition Loan Documents, without

defense, counterclaim or offset of any kind, in the aggregate principal amount of (i)(a)

$1,212,852,799.67 outstanding under the Term Loan Facility (as defined in the

Prepetition Credit Agreement), (b) $191,442,947.19 outstanding under the New Term

Loans (as defined in the Prepetition Credit Agreement), (c) $240,307,341.06 outstanding

under the Revolving Facility (as defined in the Prepetition Credit Agreement), (d)

$38,616,606.72 outstanding under the L/C Facility (as defined in the Prepetition Credit

Agreement); and (e) $124,500,000.00 outstanding under the Senior Tranche Advance (as

defined in the Prepetition Credit Agreement) bridge financing facility, *plus* (ii) accrued

and unpaid interest with respect thereto and any additional fees, costs and expenses

(including any attorneys', financial advisors' and other professionals' fees and expenses

that are chargeable or reimbursable under the Prepetition Loan Documents) due under the

Prepetition Loan Documents.  All obligations of the Debtors arising under the Prepetition

Loan Documents (including, without limitation, the "Obligations" as defined in the

Prepetition Credit Agreement) shall collectively be referred to herein as the "Prepetition

Obligations;"

(ii)     the first priority liens and security interests granted to the

Prepetition Agent (on behalf of itself and the Prepetition Secured Parties) (collectively,

the "Prepetition First Priority Liens") in substantially all of the Debtors' assets (the

9

"Prepetition Collateral") as more particularly described in the Prepetition Collateral Documents are (i) valid, binding, perfected and enforceable liens and security interests in the real and personal property described in the Prepetition Collateral Documents; (ii) not subject to, pursuant to the Bankruptcy Code or other applicable law, avoidance, disallowance, reduction, recharacterization, recovery, subordination, attachment, offset, counterclaim, defense or "claim" (as defined in the Bankruptcy Code) of any kind; and (iii) subject and subordinate only to (A) the Carve-Out (as defined below), (B) the DIP Liens (as defined below) and (C) Permitted Liens (as defined in the Prepetition Credit Agreement), and the Debtors each irrevocably waive, for themselves and their subsidiaries and affiliates, any right to challenge or contest in any way the Prepetition First Priority Liens or the validity or enforceability of the Prepetition Obligations and the Prepetition Loan Documents (it being understood that the stipulations and waivers of the Debtors in this clause (ii) shall be deemed not to have been made (other than with respect to (x) the Senior Tranche Obligations (as defined in the Prepetition Credit Agreement), (y) Prepetition Collateral Documents executed pursuant to Section 4.1(d) of the Security Agreement (as defined in the Prepetition Credit Agreement) and (z) Section 2(B) of any Post-Effective Date Senior Aircraft Security Agreement (as defined in the Security Agreement)) regarding the assets on which liens have been or were intended to have been granted pursuant to Prepetition Collateral Documents executed on or after the Third Amendment Effective Date (as defined in the Prepetition Credit Agreement));

       (iii)    (a) the Prepetition Obligations constitute legal, valid and binding Obligations (as defined in the Prepetition Credit Agreement) of each of the Debtors; (b) no offsets, defenses or counterclaims to the Prepetition Obligations exist; (c) no portion

of the Prepetition Obligations is subject to avoidance, disallowance, reduction or subordination pursuant to the Bankruptcy Code or applicable non-bankruptcy law; (d) the Prepetition Loan Documents are valid and enforceable by the Prepetition Agent for the benefit of the Prepetition Secured Parties against each of the applicable Debtors; (e) the liens and security interests of the Prepetition Agent and the other Prepetition Secured Parties constitute valid, binding, enforceable and perfected liens in and to the Prepetition Collateral, having the priority set forth in the Prepetition Loan Documents and subject only to "Permitted Liens" (as defined in the Prepetition Credit Agreement)[3] that are valid, perfected, enforceable and non-avoidable as of the Petition Date and senior in priority to the liens and security interests of the Prepetition Agent and Prepetition Secured Parties in the Prepetition Collateral, and are not subject to avoidance, reduction, disallowance, disgorgement, counterclaim, surcharge or subordination pursuant to the Bankruptcy Code or applicable non-bankruptcy law; (f) the Prepetition Obligations constitute allowed claims against the applicable Debtors' estates; and (g) no claim of or cause of action held by the Debtors or their estates exists against the Prepetition Agent, the other Prepetition Secured Parties or their agents, whether arising under applicable state or federal law (including, without limitation, any recharacterization, subordination, avoidance or other claims arising under or pursuant to sections 105, 510 or 542 through 553 of the Bankruptcy Code), or whether arising under or in connection with any of the Prepetition Loan Documents (or the transactions contemplated thereunder), Prepetition Obligations or Prepetition First Priority Liens, including without limitation, any right to assert any

---

[3] Nothing shall prejudice the rights of any party in interest including, but not limited to, the Debtors, the DIP Secured Parties, the Prepetition Secured Parties, and the Committee to challenge the validity, priority, enforceability, seniority, avoidability, perfection or extent of any such liens and/or security interests.

disgorgement or recovery (it being understood that the stipulations of the Debtors in the

foregoing clause (e) shall be deemed not to have been made (other than with respect to

(x) the Senior Tranche Obligations (as defined in the Prepetition Credit Agreement) , (y)

Prepetition Collateral Documents executed pursuant to Section 4.1(d) of the Security

Agreement (as defined in the Prepetition Credit Agreement) and (z) Section 2(B) of any

Post-Effective Date Senior Aircraft Security Agreement (as defined in the Security

Agreement)) regarding the assets on which liens have been or were intended to have been

granted pursuant to Prepetition Collateral Documents executed on or after the Third

Amendment Effective Date (as defined in the Prepetition Credit Agreement)); and

(v)    all of the Debtors' cash, including any cash in the deposit accounts,

wherever located, constitutes Cash Collateral of the Prepetition Agent and the other

Prepetition Secured Parties (it being understood that the stipulations and waivers of the

Debtors in this clause (v) shall be deemed not to have been made (other than with respect

to (x) the Senior Tranche Obligations (as defined in the Prepetition Credit Agreement),

(y) Prepetition Collateral Documents executed pursuant to Section 4.1(d) of the Security

Agreement (as defined in the Prepetition Credit Agreement) and (z) Section 2(B) of any

Post-Effective Date Senior Aircraft Security Agreement (as defined in the Security

Agreement)) regarding cash proceeds of assets on which liens have been or were

intended to have been granted pursuant to Prepetition Collateral Documents executed on

or after the Third Amendment Effective Date (as defined in the Prepetition Credit

Agreement)).

G.    **Budget for DIP Facility**.  Attached hereto as Exhibit B is a revised cash

flow forecast setting forth all projected cash receipts and cash disbursements (by line item) on a

monthly basis (the "First Supplemental Approved Budget") for the period beginning on the Petition Date through and including the Scheduled Termination Date (as defined in the DIP Credit Agreement). The First Supplemental Approved Budget may be modified or supplemented from time to time by additional budgets (covering any time period covered by a prior budget or covering additional time periods) prepared by the Debtors and approved by the DIP Agent and the Required DIP Lenders (as defined below), without subsequent notice to or order of the Court (each such additional budget, a "Supplemental Approved Budget" and together with the "Initial Approved Budget" attached to the Interim Order and the First Supplemental Approved Budget attached hereto, the "Approved Budget"), in accordance with the terms of the DIP Credit Agreement; provided, however, notice of any modification or supplement to the Approved Budget shall be given to the Committee. The First Supplemental Approved Budget is an integral part of this Final Order and has been relied upon by the DIP Agent, the other DIP Secured Parties and the Prepetition Secured Parties in consenting to this Final Order, to provide the DIP Facility and to permit the use of the Cash Collateral. The Debtors represent and warrant to the DIP Agent, the other DIP Secured Parties, the Prepetition Secured Parties and this Court that the Approved Budget includes and contains the Debtors' best estimate of all operational receipts and all operational disbursements, fees, costs and other expenses that will be payable, incurred and/or accrued by any of the Debtors during the period covered by the Approved Budget and that such operational disbursements, fees, costs and other expenses will be timely paid in the ordinary course of business pursuant to and in accordance with the Approved Budget unless such operational disbursements, fees, costs and other expenses are not incurred or otherwise payable. The Debtors further represent that the First Supplemental Approved Budget is achievable and will allow the Debtors to operate in the Chapter 11 Cases and pay postpetition administrative

expenses as they come due.  In accordance with the DIP Credit Agreement, the Debtors shall be

required to provide to the DIP Agent and the Committee a weekly report of actual cash receipts

and disbursements on a consolidated basis and a calculation of Net Cash Flow (as defined in the

DIP Credit Agreement), a monthly updated budget in form and scope similar to the First

Supplemental Approved Budget for the period through the Scheduled Termination Date, and a

monthly variance report (the "Budget Variance Report") comparing the actual cash receipts and

disbursements and Net Cash Flow of the Debtors on a consolidated basis from the Petition Date

through the most recently completed reporting period with the projections in the Approved

Budget.  The Debtors shall be permitted a variance between Net Cash Flow on a consolidated

basis and the amounts projected in the Approved Budget of (a) twenty percent (20%) for the

Variance Covenant Testing Period (as defined in the DIP Credit Agreement) ending June 2,

2012, (b) fifteen percent (15%) for the Variance Covenant Testing Period ending June 30, 2012,

(c) fifteen percent (15%) for the Variance Covenant Testing Period ending July 28, 2012 and (d)

ten percent (10%) for any Variance Covenant Testing Period ending thereafter.

      **H.**    **Immediate Need for Funding**.  Based upon the pleadings and

proceedings of record in the Chapter 11 Cases, the Debtors do not have sufficient available

sources of working capital and financing to carry on the operation of their businesses without the

DIP Facility and authorized use of Cash Collateral.  As a result of the Debtors' financial

condition, the use of Cash Collateral alone will be insufficient to meet the Debtors' immediate

postpetition liquidity needs. The Debtors' ability to maintain business relationships with their

vendors, suppliers and customers, pay their employees, purchase and supply new inventory and

otherwise finance their operations is essential to the Debtors' continued viability.  In the absence

of the DIP Facility and the authority of this Court to use Cash Collateral, the Debtors' businesses

14

and estates would suffer immediate and irreparable harm, including, without limitation, a cessation of substantially all of their operations. The preservation, maintenance and enhancement of the going concern value of the Debtors are of the utmost significance and importance to a successful restructuring of the Debtors under chapter 11 of the Bankruptcy Code.

I.    **No Credit on More Favorable Terms**.  Based upon the pleadings and proceedings of record in the Chapter 11 Cases, the Debtors are unable to obtain sufficient interim and long-term financing from sources other than the DIP Lenders on terms and subject to conditions more favorable than under the DIP Facility and the DIP Loan Documents, and are not able to obtain unsecured credit allowable as an administrative expense under section 503(b)(1) of the Bankruptcy Code.  The Debtors are also unable to obtain secured credit allowable under sections 364(c)(1), 364(c)(2) and 364(c)(3) of the Bankruptcy Code for the purposes set forth in the DIP Credit Agreement without the Debtors (i) granting to the DIP Agent and the DIP Lenders, subject to the Carve-Out as provided herein, (x) the DIP Superpriority Claims (as defined below) and (y) the DIP Liens in the DIP Collateral, as provided herein and in the DIP Loan Documents, (ii) agreeing to the Senior Tranche Repayment and the Letter of Credit Conversion and (iii) providing the Prepetition Secured Parties the adequate protection as provided herein.

J.    **Reasonable; Good Faith**.  The DIP Lenders have indicated a willingness to provide Borrower with post-petition secured financing but solely on the terms and conditions set forth in this Final Order and the DIP Loan Documents.  After considering all of their alternatives, the Debtors have concluded, in an exercise of their sound business judgment, that the DIP Facility to be provided by the DIP Lenders and the authorization to use the Cash Collateral to be provided by the Required Lenders (as defined in the Prepetition Credit

15

Agreement) (the "<u>Required Prepetition Lenders</u>") represents the best financing presently available to the Debtors.  Based upon the pleadings and proceedings of record in the Chapter 11 Cases, (i) the terms and conditions of the DIP Facility are fair and reasonable, reflect the Debtors' exercise of prudent business judgment consistent with their fiduciary duty and are supported by reasonably equivalent value and fair consideration, (ii) the DIP Facility has been negotiated in good faith and at arm's length among the Debtors, the DIP Agent and the other DIP Lenders and (iii) any credit extended, loans made and other financial accommodations extended to the Debtors by the DIP Lenders have been extended, issued or made, as the case may be, in "good faith" within the meaning of section 364(e) of the Bankruptcy Code.  The Debtors have requested entry of this Final Order pursuant to Bankruptcy Rules 4001(b)(2) and 4001(c)(2) and the Local Bankruptcy Rules.  Absent granting the relief sought by this Final Order, the Debtors' estates will be immediately and irreparably harmed.  Consummation of the DIP Facility and authorization of the use of the Prepetition Collateral (including the Cash Collateral) in accordance with this Final Order and the DIP Loan Documents are, therefore, in the best interests of the Debtors' estates and are consistent with the Debtors' fiduciary duties.

K.    **Use of Cash Collateral**.  An immediate and critical need exists for the Debtors to use the Cash Collateral (in addition to the DIP Facility) to continue to operate their businesses, pay wages, maintain business relationship with vendors, suppliers and customers, make capital expenditures, make adequate protection payments and generally conduct their business affairs so as to avoid immediate and irreparable harm to their estates and the value of their assets.

L.    **Consent by Prepetition Secured Parties**.  The Prepetition Secured Parties, at the direction of the Required Prepetition Lenders, have consented to, conditioned on

the entry of this Final Order (i) the financing arrangements contemplated by the Interim Order, this Final Order and the DIP Loan Documents and (ii) Debtors' proposed use of Cash Collateral, on the terms and conditions set forth in the Interim Order, this Final Order and the DIP Credit Agreement, and such consent is binding on all Prepetition Secured Parties.

M.    **Adequate Protection**.    The adequate protection provided to the Prepetition Secured Parties solely for any diminution in the value of such parties' respective interest in the Prepetition Collateral from and after the Petition Date, including, without limitation, from the DIP Facility and use of the Cash Collateral, pursuant to the provisions of this Final Order, is consistent with and authorized by the Bankruptcy Code and is offered by the Debtors to protect such parties' interests in the Prepetition Collateral in accordance with sections 361, 362, 363 and 364 of the Bankruptcy Code.    The consent of the Prepetition Secured Parties to the priming of their liens by the DIP Liens does not constitute, and shall not be construed as constituting, an acknowledgment or stipulation by the Prepetition Secured Parties that their respective interests in the Prepetition Collateral are adequately protected pursuant to this Final Order or otherwise.    The adequate protection provided herein and other benefits and privileges contained herein are necessary in order to (i) protect the Prepetition Secured Parties solely from the diminution in value of their Prepetition Collateral and (ii) obtain the foregoing consents and agreements.

N.    **Good Cause Shown; Best Interest**.    The Debtors have requested immediate entry of this Final Order pursuant to Bankruptcy Rules 4001(b)(2) and 4001(c)(2). Absent entry of this Final Order, the Debtors' businesses, properties and estates will be immediately and irreparably harmed.    This Court concludes that good cause has been shown and entry of this Final Order is in the best interest of the Debtors' respective estates and creditors as

17

its implementation will, among other things, allow for the continued operation of the Debtors'

existing businesses and enhance the Debtors' prospects for a successful reorganization.

        O.    **No Liability to Third Parties**.  The Debtors stipulate and the Court finds

that in making decisions to advance loans to the Debtors, in administering any loans, in

permitting the Debtors to use Cash Collateral, in accepting the First Supplemental Approved

Budget or any future Supplemental Approved Budget or in taking any other actions permitted by

the Interim Order, this Final Order or the DIP Loan Documents, none of the DIP Agent nor DIP

Secured Parties shall be deemed to be in control of the operations of the Debtors or to be acting

as a "responsible person" or "owner or operator" with respect to the operation or management of

the Debtors.

        P.    **Section 552**.  In light of the subordination of their liens and super-priority

administrative claims (i) in the case of the DIP Secured Parties, to the Carve-Out and the Non-

Primed Liens and (ii) in the case of the Prepetition Secured Parties to the Carve-Out, the DIP

Liens and the Non-Primed Liens, each of the DIP Secured Parties and Prepetition Secured

Parties is entitled to all of the rights and benefits of section 552(b) of the Bankruptcy Code, and

the "equities of the case" exception shall not apply.

        Based on the foregoing, and upon the record made before this Court at the Final

Hearing, and good and sufficient cause appearing therefore,

        **IT IS HEREBY ORDERED, ADJUDGED AND DECREED THAT**:

        1.    **Approval of Final Order**.  The Motion is approved on the terms and

conditions set forth in this Final Order.  Any objections that have not previously been withdrawn

are hereby overruled.  This Final Order shall become effective immediately upon its entry.

2.      **Ratification of the Interim Order**.  The terms of the Interim Order are hereby ratified and confirmed, except to the extent modified by this Final Order, and all DIP Obligations incurred and borrowings and payments made and protections afforded to the DIP Secured Parties and to any other party pursuant to the Interim Order are ratified and confirmed on a final basis and shall be deemed made in accordance with and pursuant to this Final Order.

3.      **Approval of DIP Loan Documents; Authority Thereunder**.  The DIP Loan Documents are hereby approved on a final basis.  The Debtors are expressly authorized, empowered and directed on a final basis to perform all of their obligations under the DIP Loan Documents, including the DIP Credit Agreement, which is approved and incorporated herein by reference, and such additional documents, instruments and agreements as may be required or requested by the DIP Agent and the DIP Lenders pursuant to the DIP Credit Agreement to implement the terms or effectuate the purposes of this Final Order.  The Debtors are authorized to comply with and perform all of the terms and conditions contained in the DIP Loan Documents, and directed to repay amounts borrowed, together with interest, fees (including, without limitation, the fees in Section 2.10 of the DIP Credit Agreement) and premiums (as applicable) thereon and any other outstanding DIP Obligations to the DIP Lenders in accordance with and subject to the terms and conditions set forth in the DIP Loan Documents and this Final Order.  In the event of any inconsistency between the DIP Loan Documents and this Final Order, this Final Order shall control.

4.      **Authorization to Borrow/Use Cash Collateral/Convert Letters of Credit**. Pursuant to this Final Order, the DIP Credit Agreement and the other DIP Loan Documents, (a) the Borrower is authorized on a final basis to borrow up to a maximum principal amount of $400 million under the Delayed Draw Facility, a portion of which may be applied to

19

provide cash collateral for the issuance of Letters of Credit, (b) the Letter of Credit Conversion is approved on a final basis, (c) the Guarantors are authorized on a final basis to guarantee the DIP Obligations, and (d) the Senior Tranche Repayment is authorized on a final basis, in each case subject to the terms and conditions of this Final Order and the DIP Loan Documents.  The Debtors are authorized on a final basis to use the proceeds of the DIP Facility and the Cash Collateral in the operation of the Debtors' businesses, to make the Senior Tranche Repayment and to cash collateralize the Letters of Credit, <u>provided</u>, that any proposed use of proceeds of the DIP Facility or use of Cash Collateral is consistent with the terms of the DIP Loan Documents, the Approved Budget and this Final Order.  Authorization to use Cash Collateral and any commitment to make additional Delayed Draw Loans or issue Letters of Credit will terminate upon the Scheduled Termination Date unless terminated earlier pursuant to the terms of the DIP Credit Agreement or this Final Order.  In furtherance of the foregoing and without further approval of this Court, each Debtor is authorized on a final basis, and the automatic stay imposed by section 362 of the Bankruptcy Code is lifted to the extent necessary, to perform all acts and to make, execute and deliver all instruments and documents and to pay all fees, that may be reasonably required or necessary for the Debtors' performance of their obligations under the DIP Loan Documents and this Final Order, including, without limitation:

a.    The execution, delivery and performance of the DIP Loan Documents, including, without limitation, the DIP Credit Agreement, any security and pledge agreement, any aircraft security agreement and any mortgage contemplated thereby;

b.    the execution, delivery and performance of one or more amendments, waivers, consents or other modifications to and under the DIP Loan

20

Documents, it being understood that no further approval of the Court shall be required for any non-material amendments, waivers, consents or other modifications to and under the DIP Loan Documents or the DIP Obligations; provided, however, that notice of any modification or amendment to the DIP Loan Documents shall be provided to counsel to the Committee, to the U.S. Trustee and to the Prepetition Agent, each of whom shall have three (3) days from the date of such notice within which to object in writing to such modification or amendment, and if the Committee or the U.S. Trustee timely objects to any modification or amendment to the DIP Loan Documents, such modification or amendment shall only be permitted pursuant to an order of this Court;

c.      the non-refundable payment to the DIP Secured Parties and the Prepetition Secured Parties of the fees and costs and expenses provided for under the DIP Loan Documents, the Prepetition Credit Agreement and this Final Order as may be due from time to time, including, without limitation, fees and expenses of Agents' Counsel, Wachtell, Lipton, Rosen & Katz as counsel to Prepetition Lenders holding approximately 70% of the "Loans" and "LC Facility Participations" made under (and as defined in) the Prepetition Credit Agreement (in such capacity, the "Majority Lenders' Counsel"), Houlihan Lokey Howard & Zukin Capital, Inc. as financial advisor to the DIP Agent and the Prepetition Agent (in such capacities, "Agents' Financial Advisor"), as provided for in the DIP Loan Documents, the Prepetition Credit Agreement and this Final Order, which fees and expenses shall not be subject to the approval of the Court, nor shall any recipient of any such payment be required to file with respect thereto any interim or final fee application with the Court; provided that each of Agents' Counsel, Majority Lenders' Counsel and Agents' Financial Advisor may apply amounts received from the Debtors

for reimbursement of fees and expenses to either their pre-petition services or their post-petition services; provided, however, that copies of any invoices (redacted, as necessary, to protect any applicable privilege) with respect to such fees, expenses and costs shall be provided to the U.S. Trustee and counsel to the Committee, and each such party shall have ten (10) days from the date of such notice within which to object in writing to such payment;

d.    each borrowing of Delayed Draw Loans up to the maximum principal amount and issuance of Letters of Credit (including the Letter of Credit Conversion) in accordance with the terms hereof;

e.    the making of the Senior Tranche Repayment and effectuation of the Letter of Credit Conversion;

f.    the making of the adequate protection payments provided for in this Final Order; and

g.    the performance of all other acts required under or in connection with the DIP Loan Documents.

5.    **Termination Event.**  The Debtors' authority to use the proceeds of the DIP Facility or any Prepetition Collateral, including Cash Collateral, and any commitment to make additional Delayed Draw Loans or issue Letters of Credit, shall each terminate upon (unless, for each subpart of this Paragraph 5 (other than Subparagraph 5(a), which shall require the consent of each effected DIP Lender), consented to by the DIP Lenders holding a majority of the outstanding loans and related commitments under the DIP Facility (the "Required DIP Lenders")) the earliest of (each a "Termination Event"):

a.    December 15, 2012;

22

b.      The date of acceleration of any outstanding borrowings under the DIP Facility pursuant to an Event of Default (as defined in the DIP Credit Agreement);

c.      Conversion of any of the Chapter 11 Cases to a case under chapter 7 of the Bankruptcy Code unless otherwise consented to in writing by the DIP Agent and the majority of the DIP Lenders;

d.      Dismissal of any of the Chapter 11 Cases, unless otherwise consented to in writing by the DIP Agent and the majority of the DIP Lenders; or

e.      The effective date of any Debtors' plan of reorganization confirmed in the Chapter 11 Cases.

Until a Termination Event has occurred, the Prepetition Secured Parties shall not (i) commence judicial or non-judicial enforcement or collection proceedings against any Specified Subsidiary (as defined below) with respect to the payment of any Prepetition Obligations or (ii) commence any foreclosure, enforcement or levy against or seizure or transfer of all or any portion of the Prepetition Collateral of any Specified Subsidiary or any interests therein, or with respect to any assets or interests of any Specified Subsidiary, except to the extent authorized herein or by any other order of this Court.  Any statute of limitations, contractual time limitation or other defense based upon any requirement that at any time any action be taken by any Prepetition Secured Party against any Specified Subsidiary under any Prepetition Loan Document is hereby tolled, and the Debtors have represented that the Specified Subsidiaries have consented to such tolling. "Specified Subsidiary" shall mean each of (i) Travel Air Insurance Company, Ltd., a Kansas corporation, (ii) Travel Air Insurance Company (Kansas), a Kansas corporation, (iii) Hawker Beech de Mexico S. de R.L. de C.V., a Mexican limited liability company, (iv) Hawker Beech International Services de Mexico S. de R.L. de C.V., a Mexican limited liability company and

(v) Hawker Beechcraft Ltd. a limited company incorporated under the laws of England and Wales.

6.    **Perfection in Cash.**    Subject to the Carve Out and other provisions of this Final Order, all financial institutions in which the Debtors' accounts are located are authorized and directed to comply with any request of the DIP Agent to turn over to the DIP Agent all funds therein without offset or deduction of any kind.    The Debtors are directed to enter into such blocked account agreements with springing cash dominion with the DIP Agent and such financial institutions as the DIP Agent may require, or alternatively, the DIP Agent may enjoy the benefit of all control agreements to which the Prepetition Agent is a party without the need to enter into new blocked account agreements.

7.    **Interest on DIP Facility.**    The rates of interest to be charged for the Delayed Draw Loans and any other extensions of credit to the Debtors pursuant to the DIP Credit Agreement shall be the rates set forth in the DIP Credit Agreement and shall be payable at the times set forth in the DIP Credit Agreement.

8.    **Payment of DIP Fees and Expenses**.    The Debtors are authorized and directed to pay (i) all fees when due under the DIP Credit Agreement (including, without limitation, any fees provided for under Section 2.10 of the DIP Credit Agreement) in the amounts set forth in the DIP Credit Agreement and (ii) costs, expenses and any other fees or other amounts payable under the terms of the DIP Loan Documents and all other reasonable, documented, out-of-pocket costs and expenses of the DIP Agent in accordance with the terms of the DIP Loan Documents (including, without limitation, the reasonable, documented, out-of-pocket prepetition and postpetition fees, costs and expenses of Agents' Counsel and Agents' Financial Advisor).    None of such fees, costs and expenses shall be subject to Court approval or

24

U.S. Trustee guidelines, and no recipient of any such payment shall be required to file with respect thereto any interim or final fee application with this Court.  Copies of any invoices (redacted, as necessary, to protect any applicable privilege) with respect to such fees, expenses and costs shall be provided to the U.S. Trustee and counsel to the Committee, and each such party shall have ten (10) days from the date of such notice within which to object in writing to such payment.  In addition, pursuant to the Interim Order and this Final Order, the Debtors are authorized and directed to indemnify the DIP Agent and the other DIP Secured Parties (and each of their respective directors, officers, employees, agents, representatives, attorneys, consultants, advisors and controlling persons) against any liability arising in connection with the DIP Loan Documents, to the extent set forth in the DIP Loan Documents.  All such unpaid fees, costs and expenses and indemnities of the DIP Agent and the DIP Secured Parties shall be secured by the DIP Collateral and afforded all of the priorities and protections afforded to the DIP Obligations under the Interim Order, this Final Order and the DIP Loan Documents.

9.    **Validity of DIP Loan Documents**.  The DIP Loan Documents shall constitute, and are hereby deemed to be the legal, valid and binding obligations of the Debtors party thereto, enforceable against each such Debtor in accordance with the terms of the DIP Loan Documents and the terms of this Final Order for all purposes during the Chapter 11 Cases, in any subsequently converted Chapter 11 Case of any Debtor under chapter 7 of the Bankruptcy Code or after dismissal of any of the Chapter 11 Cases.  Proceeds of the Delayed Draw Loans were applied and will be applied only to fund postpetition administrative expenses, the Debtors' working capital, the Senior Tranche Repayment, and to pay such other amounts as are required or permitted to be paid pursuant to the DIP Credit Agreement, the Interim Order, this Final Order and any other orders of this Court, all subject to and in accordance with the Approved Budget.

Except as set forth in this Final Order, no obligation, payment, transfer or grant of security under the DIP Loan Documents, the Interim Order or this Final Order shall be stayed, restrained, voided, voidable or recoverable under the Bankruptcy Code or under any applicable non-bankruptcy law, or subject to any defense, reduction, setoff, recoupment or counterclaim.

10. **DIP Superpriority Claims**.  In accordance with Bankruptcy Code section 364(c)(1), the DIP Obligations shall constitute superpriority administrative expense claims (the "DIP Superpriority Claims") against each of the Debtors with priority in payment over any and all administrative expenses, adequate protection claims, diminution claims and all other claims against the Debtors, now existing or hereafter arising, of any kind whatsoever, including, without limitation, all administrative expenses or other claims of the kinds specified or ordered pursuant to any provision of the Bankruptcy Code, including, but not limited to, Bankruptcy Code sections 105, 326, 328, 330, 331, 503(b), 506(c), 507(a), 507(b), 546, 726, 1113 and 1114 or otherwise, including those resulting from the conversion of any of the Chapter 11 Cases pursuant to section 1112 of the Bankruptcy Code, whether or not such expenses or claims may become secured by a judgment lien or other non-consensual lien, levy or attachment; provided, however, that the DIP Superpriority Claims shall be subject to the Carve-Out (as defined below).  The DIP Superpriority Claims shall for purposes of section 1129(a)(9)(A) of the Bankruptcy Code be considered administrative expenses allowed under section 503(b) of the Bankruptcy Code, shall be against each Debtor on a joint and several basis, and shall be payable from and have recourse to all prepetition and postpetition property of the Debtors (other than Avoidance Actions) and all proceeds thereof.  Except as set forth in this Final Order, no other superpriority claims shall be granted or allowed in these Chapter 11 Cases.

26

11.    **DIP Liens**.  As security for the DIP Obligations, the DIP Agent on behalf and for the benefit of the DIP Secured Parties is hereby granted on a final basis, subject only to payment of the Carve-Out, (without the necessity of the execution by the Debtors or the filing or recordation of mortgages, security agreements, lock box or control agreements, mortgages, aircraft security agreements, financing statements, or any other instruments or otherwise) valid, binding and fully perfected, security interests in, and liens upon (the "DIP Liens") all present and after-acquired property of the Debtors of any nature whatsoever (including, without limitation, "Collateral" (as defined in the DIP Credit Agreement) and all cash and cash equivalents contained in any account maintained by any of the Debtors but not Avoidance Actions) (collectively, with all proceeds and products of any or all of the foregoing, the "DIP Collateral" and, together with the Prepetition Collateral, the "Collateral"), such DIP Liens to consist of:

a.    First Lien on Cash Balances and Unencumbered Property. Pursuant to section 364(c)(2) of the Bankruptcy Code, a continuing, enforceable, first priority, fully-perfected lien and security interest upon all of the Debtors' right, title and interest in, to and under all DIP Collateral that is not otherwise encumbered by a validly perfected security interest or lien on the Petition Date (collectively, the "Unencumbered Property"); provided, however, that Unencumbered Property shall not include the Debtors' claims and causes of action under sections 502(d), 544, 545, 547, 548, 549, 550, and 553 of the Bankruptcy Code and any other avoidance actions under the Bankruptcy Code or proceeds thereof (collectively, "Avoidance Actions").

b.    Liens Priming Prepetition Secured Parties' Liens.  Pursuant to section 364(d)(1) of the Bankruptcy Code, a first priority, senior, priming, perfected lien and security interest upon all of the Debtors' right, title and interest in, to and under all

DIP Collateral that is subject to any existing lien presently securing the Prepetition Obligations, subject only to Non-Primed Liens (as defined below). Such security interest shall be senior to and prime the security interests and liens of the Prepetition Secured Parties on account of the Prepetition Obligations and the Adequate Protection Liens (as defined below) granted to the Prepetition Secured Parties, but shall be junior to any Non-Primed Liens on such property.

        c.    <u>Liens Junior to Certain Other Liens</u>. Pursuant to section 364(c)(3) of the Bankruptcy Code, a junior, perfected lien and security interest (other than as set forth in clause (d) below) upon all of the Debtors' right, title and interest in, to and under all DIP Collateral (other than the property described in clause (a) or (b) of this Paragraph 11, as to which liens and security interests in favor of the DIP Agent will be as described in such clauses), whether now existing or hereafter acquired, that is subject to (A) any validly perfected security interest or lien in existence as of the Petition Date that is not subject to section 552(a) of the Bankruptcy Code, or (B) any valid security interest or lien perfected (but not granted) after the Petition Date (to the extent such perfection in respect of a pre-Petition Date claim is expressly permitted under the Bankruptcy Code) that is not subject to section 552(a) of the Bankruptcy Code, in each case that is senior in priority to the Prepetition First Priority Liens (the "<u>Non-Primed Liens</u>").

        d.    <u>Liens Senior to Certain Other Liens</u>. The DIP Liens and the Adequate Protection Liens shall not be subject or subordinate to (i) any lien or security interest that is avoided and preserved for the benefit of the Debtors and their estates under section 551 of the Bankruptcy Code, (ii) any liens arising after the Petition Date that are not Non-Primed Liens (for purposes of this provision, Non-Primed Liens shall include,

for the avoidance of doubt, any liens or security interests granted in favor of any federal, state, municipal or other governmental unit, commission, board or court for any liability of the Debtors that would (x) otherwise constitute Non-Primed Liens and (y) which lien rights accrued prior to the Petition Date but which, in accordance with applicable law, were not perfected until after the Petition Date), or (iii) any intercompany or affiliate liens of the Debtors.

12.    **Prepetition Lenders Adequate Protection**.   Subject to Paragraph 16 herein, until the indefeasible repayment of the Prepetition Obligations, the Prepetition Secured Parties are entitled pursuant to sections 361, 363(c) and 364(d)(1) of the Bankruptcy Code to adequate protection of their interests in the Prepetition Collateral for and equal in amount to the aggregate diminution in the value thereof as a result of (a) the provisions of this Final Order granting first priority and/or priming liens on such Prepetition Collateral to the DIP Agent for the benefit of the DIP Secured Parties; (b) authorizing the use of Cash Collateral; (c) the imposition of the automatic stay pursuant to section 362 of the Bankruptcy Code; or (d) otherwise, pursuant to sections 361(a), 363(c) and 364(d)(1) of the Bankruptcy Code.   The Prepetition Agent, on behalf and for the benefit of the Prepetition Secured Parties was granted by the Interim Order and is hereby granted on a final basis, solely to the extent of the diminution in value of the Prepetition First Priority Liens in the Prepetition Collateral from and after the Petition Date, the following (collectively, the "Prepetition Adequate Protection Obligations"):

a.    Adequate Protection Liens.  The Prepetition Agent, on behalf and for the benefit of the Prepetition Secured Parties, is hereby granted on a final basis valid, enforceable, unavoidable and fully perfected replacement liens and security interests in all Collateral (but not, for the avoidance of doubt, in the Avoidance Actions), to the

29

extent of any diminution in the Prepetition Secured Parties' interest in the Prepetition

Collateral, which shall be junior to the DIP Liens and Non-Primed Liens and subject to

the Carve-Out (the "Prepetition Adequate Protection Liens").  The Prepetition Adequate

Protection Liens were deemed to be legal, valid, binding, enforceable, perfected liens, not

subject to subordination or avoidance, for all purposes in the Chapter 11 Cases.  Except

as otherwise set forth in this Paragraph 12 or otherwise in this Final Order, the Prepetition

Adequate Protection Liens shall not be subordinated or be made *pari passu* with any

other lien under section 364(d) of the Bankruptcy Code or otherwise.  The Prepetition

Adequate Protection Liens were deemed to have been perfected automatically upon the

entry of the Interim Order and continue to be perfected, without the necessity of filing of

any UCC-1 financing statement, state or federal notice, mortgage or other similar

instrument or document in any state or public record or office and without the necessity

of taking possession or control of any collateral.

        b.     Superpriority Claims.  The Prepetition Agent, on behalf and for the

benefit of the Prepetition Secured Parties, is hereby granted superpriority administrative

expense claims (the "Prepetition Superpriority Claims") on a final basis under sections

503 and 507 of the Bankruptcy Code against the Debtors' estates, other than Avoidance

Actions, to the extent that the Adequate Protection Liens do not adequately protect

against the diminution in value of the Prepetition Collateral, which Prepetition

Superpriority Claims, if any, shall have priority in payment over any and all

administrative expenses of the kinds specified or ordered pursuant to any provision of the

Bankruptcy Code, including, but not limited to, Bankruptcy Code sections 105, 326, 328,

330, 331, 503(b), 506(c), 507(a), 507(b), 726, 1113 and 1114, or otherwise and including

those resulting from the conversion of any of the Chapter 11 Cases pursuant to section 1112 of the Bankruptcy Code; provided that at all times while such claim is in full force and effect pursuant to this Final Order, the Prepetition Superpriority Claims shall be junior in all respects to the DIP Superpriority Claims and subject to the Carve-Out;

    c. <u>Fees and Expenses</u>.  The Prepetition Agent, on behalf and for the benefit of the Prepetition Secured Parties, is hereby granted, and shall receive payments in cash from the Debtors on a current basis of all fees, costs and expenses payable to the Prepetition Agent under the Prepetition Credit Agreement as in effect on the Petition Date, including but not limited to, the reasonable fees and disbursements of Agents' Counsel, Agents' Financial Advisor and Majority Lenders' Counsel, promptly upon receipt of written invoices therefor (subject in all respects to applicable privilege or work product doctrines) and without the necessity of filing motions or fee applications, including such amounts arising (A) before the Petition Date and (B) after the Petition Date to the extent such amounts arise in connection with the Chapter 11 Cases; provided, however, that none of such fees, costs and expenses shall be subject to Court approval or U.S. Trustee guidelines, and the Prepetition Agent shall not be required to file with respect thereto any interim or final fee application with this Court; provided further, however, that copies of any invoices (redacted, as necessary, to protect any applicable privilege) with respect to such fees, expenses and costs shall be provided to the U.S. Trustee, counsel to the Committee, and the Prepetition Agent and each such party shall have ten (10) days from the date of such notice within which to object in writing to such payment.  As additional adequate protection and on account of their rights as DIP Lenders, a consortium of Prepetition Lenders (some of whom have become DIP Lenders)

31

represented by Brown Rudnick LLP (in such capacity, "Minority Lenders' Counsel")

shall be entitled to payment by the Debtors of the reasonable, documented, out-of-pocket

fees and disbursements of Minority Lenders' Counsel (in addition to amounts previously

paid by the Debtors), in an amount not to exceed $300,000 in the aggregate, and such

additional $300,000 amount to be subject to increase upon agreement by the Committee,

the Debtor, and Prepetition Lenders holding a majority of the Prepetition Obligations,

solely in respect of pre-petition and post-petition work related to such Prepetition

Lenders' right to participate in the DIP Facility, the execution of a form of joinder to the

Restructuring Support Agreement by those that elected to participate in the DIP Facility,

addressing and negotiating those matters relating to such joinder, the Restructuring

Support Agreement, the Definitive Documents (as defined in the Restructuring Support

Agreement) and the rights of minority shareholders in Reorganized HBI (as defined in

the Restructuring Term Sheet attached to the Restructuring Support Agreement);

provided, however, that (i) copies of any invoices (redacted, as necessary, to protect any

applicable privilege) with respect to such Minority Lenders' Counsel's fees, expenses and

costs shall be provided to the U.S. Trustee, counsel to the Committee, and the Prepetition

Agent and each such party shall have ten (10) days from the date of such notice within

which to object in writing to such payment, after which date (if no objection has been

filed), the Debtors shall pay such invoices; (ii) such Prepetition Lenders may apply

amounts received from the Debtors for reimbursement of the fees and expenses of

Minority Lenders' Counsel to either the pre-petition services or the post-petition services

provided by Minority Lenders' Counsel; and (iii) the terms of this Order directing

payments to the Minority Lenders' Counsel shall not be deemed a waiver of the right of

such Prepetition Lenders to assert (nor the right of other parties in interest to oppose) a right to be reimbursed on account of additional fees and expenses of their counsel, either pursuant to the Prepetition Credit Agreement or the DIP Credit Agreement.

d.    Interest.    The Prepetition Agent, on behalf of the Prepetition Secured Parties, is hereby granted, and shall receive (a) payment in cash from the Debtors of all interest and fees that were due at the non-default contract rate on or prior to the Petition Date and remain unpaid as of the date hereof, (b) when due and payable, payment of interest owing postpetition under Section 2.11(b) of the Prepetition Credit Agreement, including any interest accruing pre-petition and not paid pursuant to the foregoing clause (a), at the Base Rate (or until termination of the Interest Periods applicable thereto on the Petition Date, the LIBOR Rate) plus the Applicable Margin (each term as defined in the Prepetition Credit Agreement), and (c) when due and payable, payment at the non-default contract rate of letter of credit fees owing postpetition under Section 2.10(c) of the Prepetition Credit Agreement, including any letter of credit fees accruing pre-petition and not paid pursuant to the foregoing clause (a);

e.    Financial Reporting.    The Debtors shall provide the Prepetition Agent (for distribution to the Prepetition Lenders) with the financial and other reporting as described in the DIP Credit Agreement; and

f.    Right to Seek Additional Adequate Protection.    This Final Order is without prejudice to, and does not constitute a waiver of, expressly or implicitly, the rights of the Prepetition Agent to request additional forms of adequate protection at any time or the rights of the Debtors or any other party to contest such request; provided,

33

however, that any such further or different adequate protection shall at all times be subordinate and junior to the claims and liens of the DIP Secured Parties granted under this Order and the DIP Loan Documents.

At the Debtors' request or upon any automatic extension thereof, letters of credit outstanding as of the Petition Date under the Prepetition Credit Agreement may be extended, amended or renewed with the consent of the Prepetition Issuing Bank and the Prepetition Agent (including, without limitation, any extension that would cause such letter of credit to expire on a date after the termination or maturity date of the applicable Facility under (and as defined in) the Prepetition Credit Agreement), provided that all fees and reimbursement obligations in respect thereof shall remain Prepetition Obligations.

13.    **No Waiver of Prepetition Credit Agreement Provisions; Reservation of Rights**.  Except as otherwise specifically provided in this Final Order, nothing contained in this Final Order shall be deemed a waiver or constitute a consent to the modification of any provision contained in the Prepetition Credit Agreements by the Prepetition Secured Parties, including, but not limited to, the incurrence or issuance of any indebtedness by the Debtors, the incurrence of any lien in connection therewith or the making of any payment by the Debtors.

14.    **Carve-Out**.  To the extent unencumbered funds are not available to pay administrative expenses in full, the DIP Liens, DIP Superpriority Claims, Prepetition Superpriority Claims, Adequate Protection Liens, and all liens, claims and other security interests ("Prepetition Liens") held by any party, including the DIP Agent, DIP Lenders, DIP LC Issuer, Prepetition Agent and all other Prepetition Secured Parties on account of any obligations, including the Prepetition Obligations, shall each be subject to the "Carve-Out," which shall be defined as the sum of: (i) all fees required to be paid to the Clerk of the Bankruptcy Court and to

the Office of the United States Trustee pursuant to 28 U.S.C. § 1930 plus interest at the statutory

rate (without regard to the notice set forth in clause (iii) below); (ii) reasonable fees and expenses

up to $100,000 incurred by a trustee under section 726(b) of the Bankruptcy Code (without

regard to the notice set forth in clause (iii) below); (iii) to the extent allowed at any time, whether

by interim order, procedural order or otherwise, all unpaid fees and expenses (the "Professional

Fees") of persons or firms retained by the Debtors pursuant to section 327, 328 or 363 of the

Bankruptcy Code and the Committee (collectively, "Professionals") incurred at any time before

or on the first Business Day (as defined in the DIP Credit Agreement) following delivery by the

DIP Agent to the Debtors, their counsel, the U.S. Trustee, and lead counsel to the Committee of a

written notice, which may be delivered following acceleration of the maturity of the DIP Facility,

seeking relief from the automatic stay to foreclose upon the DIP Collateral (a "Carve-Out

Trigger Notice"), whether allowed by the Bankruptcy Court prior to or after delivery of a Carve-

Out Trigger Notice; and (iv) after the first Business Day following delivery by the DIP Agent of

the Carve Out Trigger Notice, to the extent allowed at any time, whether by interim order,

procedural order or otherwise, the payment of Professional Fees and the reasonable, documented,

out-of-pocket expenses of members of the Committee in an aggregate amount not to exceed

$5,000,000; provided, however, that no portion of the Carve-Out, proceeds of the DIP Facility,

DIP Collateral, Prepetition Collateral or Cash Collateral shall include, apply to, or be available

for any fees, costs or expenses incurred by any party, including the Debtors or the Committee or

any Professionals engaged thereby, in connection with (x) the initiation or prosecution of any

claims, causes of action, adversary proceedings, or other litigation against any of the DIP

Secured Parties or the Prepetition Secured Parties, including, without limitation, (a) challenging

the amount, validity, extent, perfection, priority, or enforceability of, or asserting any defense,

counterclaim, or offset to the DIP Obligations, DIP Superpriority Claims or DIP Liens, (b) challenging the amount, validity, extent, perfection, priority, or enforceability of, or asserting any defense, counterclaim, or offset to the Prepetition Obligations, Prepetition Superpriority Claims or Prepetition Liens or (y) asserting any claims or causes of action, including, without limitation, claims or actions to hinder or delay the DIP Agent's or DIP Secured Parties' assertion, enforcement or realization on the DIP Collateral in accordance with the DIP Loan Documents, the Interim Order or this Final Order; provided further, however, that up to $250,000 shall be made available to the Committee for investigation costs in respect of the stipulations contemplated in Paragraph F above.  Nothing contained herein is intended to constitute, nor should be construed as consent by any party to, the allowance of any Professional's fees, costs or expenses and shall not affect the right or ability of any party in interest to object to the allowance and payment of any fees, expenses, reimbursement or compensation described in clauses (ii), (iii) and (iv) above.  The Borrower shall establish and maintain a segregated account (the "Carve-Out Account") and transfer funds thereto as and when required pursuant to Section 2.09 of the DIP Credit Agreement.  Such funds shall be held in the Carve-Out Account by the Borrower and, following delivery of a Carve-Out Trigger Notice, shall be applied by the Borrower to pay obligations benefitting from the Carve-Out.  Upon payment in full of such obligations, any remaining funds in the Carve-Out Account shall be applied as proceeds of Collateral in accordance with the DIP Credit Agreement and this Final Order.

15.    **Financial Reporting to the Committee**.  The Debtors shall provide the Committee with the financial and other reporting required by the DIP Credit Agreement to be provided to the DIP Agent, subject to the members of the Committee entering into non-disclosure arrangements acceptable to the Debtors

16.    **Investigation Rights**.  The Committee shall have until (i) August 10, 2012 to investigate the validity, perfection and enforceability of the Prepetition Liens and the Prepetition Obligations, or to assert any other claims or causes of action against the Prepetition Secured Parties, other than as described in clause (ii) hereof, or (ii) the date of confirmation of a plan of reorganization in the Chapter 11 Cases to investigate the validity, perfection and enforceability of Prepetition Liens or to assert claims or causes of action against the Prepetition Secured Parties, in each case solely with respect to the assets on which liens have been or were intended to have been granted pursuant to Prepetition Collateral Documents executed on or after the Third Amendment Effective Date (other than with respect to (a) the Senior Tranche Obligations and the Third Amendment (as defined in the Prepetition Credit Agreement), (b) Prepetition Collateral Documents executed pursuant to Section 4.1(d) of the Security Agreement and (c) Section 2(B) of any Post-Effective Date Senior Aircraft Security Agreement) (each such date, as applicable, the "Committee Investigation Termination Date").  All other non-debtor parties in interest (other than the PBGC, which shall have until August 10, 2012) shall have seventy-five (75) days from the date of entry of the Interim Order (the "Non-Committee Investigation Termination Date" and, together with the Committee Investigation Termination Date, the "Investigation Termination Dates") to investigate the validity, perfection and enforceability of the Prepetition Liens and the Prepetition Obligations, or to assert any other claims or causes of action against the Prepetition Secured Parties.  If the Committee or non-debtor party-in-interest determines that there may be a challenge to the Prepetition Secured Parties by the applicable Investigation Termination Date, then upon three (3) days' written notice to the Debtors and the Prepetition Secured Parties, such Committee or other non-debtor party-in-interest hereafter vested with authority by this Court shall be permitted to file and prosecute an

objection or claim related thereto (each, a "Challenge"), and shall have only until the applicable

Investigation Termination Date to file such objection or otherwise initiate an appropriate action

on behalf of the Debtors' estates setting forth the basis of any such challenge, claim or cause of

action; provided, however, that nothing contained in the DIP Loan Documents, the Interim Order

or this Final Order shall be deemed to confer standing on the Committee or any other party in

interest to commence a Challenge, and an order of this Court conferring such standing on the

Committee or other party in interest shall be a prerequisite for the prosecution of a Challenge by

the Committee or such other party in interest; provided, further, however, that the Committee **or**

**party in interest [SMB 6/1/12]** may file a motion seeking standing contemporaneously with the

filing of a Challenge (and for the avoidance of doubt, the filing of a motion seeking standing

shall satisfy any obligation to commence a Challenge prior to Committee Investigation

Termination Date, provided that a copy of the complaint constituting the Challenge is attached to

such motion), and an order conferring standing on the Committee **or party in interest [SMB**

**6/1/12]** need not be entered prior to the applicable Investigation Termination Date.   If a

Challenge is not filed on or before the applicable Investigation Termination Date, then, without

further action by any party or any further order of this Court: (a) the agreements,

acknowledgements and stipulations contained in Paragraph F of this Final Order, shall be

deemed to be immediately and irrevocably binding on the Debtors and the Debtors' estates, the

Committee and all parties-in-interest and any and all successors-in-interest as to any of the

foregoing, and the Committee and any other party-in-interest and any and all successors-in-

interest thereto, shall thereafter be forever barred from bringing any Challenge; (b) the liens and

security interests of the Prepetition Secured Parties shall be deemed to constitute valid, binding,

enforceable and perfected liens and security interests not subject to avoidance or disallowance

38

pursuant to the Bankruptcy Code or applicable non-bankruptcy law; (c) the Prepetition

Obligations shall be deemed to be finally allowed claims for all purposes in the Chapter 11 Cases

and any subsequent chapter 7 cases, in the amounts set forth in Paragraph F and shall not be

subject to challenge by any party-in-interest as to validity, priority or otherwise; and (d) the

Debtors shall be deemed to have released, waived and discharged each of the Prepetition Secured

Parties (whether in their prepetition or postpetition capacity), together with their respective

officers, directors, employees, agents, attorneys, professionals, affiliates, subsidiaries, assigns

and/or successors, from any and all claims and causes of action arising out of, based upon or

related to, in whole or in part, the Prepetition Obligations or their prepetition relationship with

such Debtor or any affiliate thereof relating to any of the Prepetition Loan Documents or any

transaction contemplated thereby, including, without limitation, any claims or defenses as to the

extent, validity, priority, or enforceability of the Prepetition Liens or the Prepetition Obligations,

any claims or defenses under chapter 5 of the Bankruptcy Code or any other causes of action.

Notwithstanding anything to the contrary herein: (a) if any such Challenge is timely commenced,

the stipulations contained in Paragraph F of this Final Order shall nonetheless remain binding on

all parties-in-interest and preclusive except to the extent that such stipulations are expressly and

successfully challenged in such Challenge; and (b) the Prepetition Secured Parties reserve all of

their rights to contest on any grounds any Challenge. For the avoidance of doubt, any trustee

appointed or elected in these cases shall, until the Investigation Termination Dates (and

thereafter, if a Challenge is commenced by the Investigation Termination Dates) for the duration

of any adversary proceeding or contested  matter commenced pursuant to this Paragraph 16 with

respect to a Challenge (whether commenced by such trustee or commenced by any other party in

interest on behalf of the Debtors' estates), be deemed to be a party other than the Debtors and

shall not, for purposes of such adversary proceeding or contested matter, be bound by the
acknowledgments, admissions, confirmations and stipulations of the Debtors in this Order.

17.    **Protection of DIP Lenders' Rights**.  So long as there are any Delayed
Draw Loans or DIP Letters of Credit or other amounts outstanding under the DIP Credit
Agreement or any other DIP Obligations are outstanding, the Prepetition Secured Parties (i) shall
not take any action to foreclose upon or recover in connection with their respective liens and
security interests, other agreements, or operation of law of this Final Order, or otherwise exercise
remedies against any DIP Collateral, except to the extent authorized herein or by any other order
of this Court, (ii) shall be deemed to have consented to any release of DIP Collateral authorized
under the DIP Loan Documents, (iii) shall not file any further financing statements, trademark
filings, copyright filings, patent filings, mortgages, notices of lien or similar instruments, enter
into any control agreement, or otherwise take any action to perfect their security interests in the
DIP Collateral unless, solely as to this clause (iii), the DIP Agent files financing statements or
other documents to perfect the liens granted pursuant to the Interim Order, this Final Order or the
DIP Loan Documents, or as may be required by applicable state law to continue the perfection of
valid and unavoidable liens or security interests as of the Petition Date and (iv) not seek to
terminate or modify the use of Cash Collateral.

18.    **Dispositions of Collateral**.  In the event of any sale, lease or other
disposition of any DIP Collateral (a "Collateral Disposition"), the Debtors shall, as a condition to
approval of such Collateral Disposition, to the extent required by the DIP Credit Agreement,
immediately pay, or cause to be paid to, the DIP Agent all of the proceeds of such Collateral
Disposition for application to the DIP Obligations and shall comply with all other provisions in
the DIP Loan Documents and this Final Order in connection with any such Collateral

40

Disposition.  All such proceeds of any Collateral Disposition shall be applied in accordance with the terms and conditions of the DIP Credit Agreement.

19.    **Further Assurances**.  The Debtors shall execute and deliver to the DIP Agent, DIP Secured Parties, Prepetition Agent and the Prepetition Secured Parties, all such agreements, financing statements, instruments and other documents as the DIP Agent, DIP Lenders, Prepetition Agent, and Prepetition Secured Parties, may reasonably request to evidence, confirm, validate or evidence the perfection of the DIP Liens or the Adequate Protection Liens granted pursuant hereto.  Further, the Debtors are authorized and directed to do and perform all acts, to make, execute and deliver all instruments and documents (including, without limitation, the execution of additional security agreements, pledge agreements, aircraft security agreements, control agreements, mortgages and financing statements), and shall pay fees and expenses that may be required or necessary for the Debtors' performance under the DIP Loan Documents, including, without limitation, (i) the execution of the DIP Loan Documents and (ii) the payment of the fees, costs and other expenses described in the DIP Loan Documents as such become due.

20.    **506(c) Waiver**.  Except to the extent of the Carve-Out, no costs or expenses of administration of the Chapter 11 Cases or any future proceeding that may result therefrom, including liquidation in bankruptcy or other proceedings under the Bankruptcy Code, shall be charged against or recovered from the DIP Collateral, the Prepetition Collateral or the Cash Collateral pursuant to section 506(c) of the Bankruptcy Code or any similar principle of law without the prior written consent of the DIP Agent or the Prepetition Agent, and no such consent shall be implied from any other action, inaction, or acquiescence by the DIP Agent, the DIP Lenders, the Prepetition Agent or the Prepetition Lenders.

41

21.    **Restrictions on Granting Post-Petition Liens**.   Other than the Carve-Out, or as otherwise provided in this Final Order or the DIP Credit Agreement, no claim having a priority superior or *pari passu* with those granted by the Interim Order or this Final Order to the DIP Secured Parties and the Prepetition Secured Parties shall be granted or permitted by any order of this Court heretofore or hereafter entered in the Chapter 11 Cases, while any portion of the DIP Facility (or refinancing thereof), any DIP Loan, any Letter of Credit, or any other DIP Obligations are outstanding.   Except as expressly permitted by this Final Order and the DIP Loan Documents, the Debtors will not, at any time during the Chapter 11 Cases, grant mortgages, security interests or liens in the DIP Collateral (or any portion thereof) to any other parties pursuant to section 364(d) of the Bankruptcy Code or otherwise.   Unless all DIP Obligations shall have indefeasibly been paid in full in cash (or as otherwise provided in this Final Order and the DIP Loan Documents), and, with respect to outstanding letters of credit issued pursuant to the DIP Loan Documents, cash collateralized in accordance with the provisions of the DIP Loan Documents, and the Adequate Protection Obligations shall have been indefeasibly paid in cash in full, the Debtors shall not seek, and it shall constitute an Event of Default (as defined in the DIP Credit Agreement) and terminate the right of the Debtors to use Cash Collateral under this Final Order if any of the Debtors seeks, or if there is entered, (i) any modification of this Final Order without the prior written consent of the DIP Agent (or, to the extent the DIP Obligations shall have been indefeasibly paid in full in cash (or otherwise fully satisfied as provided in this Final Order and the DIP Loan Documents), the Pre-Petition Agent), and no such consent shall be implied by any other action, inaction or acquiescence, or (ii) an order converting or dismissing any of the Chapter 11 Cases.

22.    **Automatic Effectiveness of Liens**.    The DIP Liens and Adequate Protection Liens shall not be subject to challenge and shall attach and become valid, perfected, enforceable, non-avoidable and effective by operation of law as of the Petition Date, having the priority set forth in Paragraphs 11 and 12 of this Final Order, without any further action by the Debtors, the DIP Secured Parties or the Prepetition Secured Parties and without the necessity of execution by the Debtors, or the filing or recordation, of any financing statements, security agreements, vehicle lien applications, mortgages, filings with the U.S. Patent and Trademark Office, the Federal Aviation Administration or the Library of Congress, or other documents or the taking of any other actions.    All DIP Collateral shall be free and clear of other liens, claims and encumbrances, except as permitted in the DIP Loan Documents and this Final Order.    If the DIP Agent or the Prepetition Agent hereafter requests that the Debtors execute and deliver to the DIP Agent or the Prepetition Agent financing statements, security agreements, collateral assignments, mortgages, or other instruments and documents considered by such agent to be reasonably necessary or desirable to further evidence the perfection of the DIP Liens or the Adequate Protection Liens, as applicable, the Debtors are hereby directed to execute and deliver such financing statements, security agreements, mortgages, collateral assignments, instruments, and documents, and the DIP Agent and the Prepetition Agent are hereby authorized to file or record such documents in their discretion without seeking modification of the automatic stay under section 362 of the Bankruptcy Code, in which event all such documents shall be deemed to have been filed or recorded at the time and on the date of entry of the Interim Order.

23.    **Non-Debtor Property and Jointly-Owned Property**.    In the ordinary course of the Debtors' business and with respect to the maintenance, service and repair of aircraft, the Debtors possess and store certain parts and other items at the Debtors' various

43

facilities that are not owned by the Debtors or are jointly owned by the Debtors and their customers including, but not limited to, certain wheel assemblies that are owned by NetJets, Inc. (or one or more of the affiliates or subsidiaries of NetJets, Inc. such as NetJets Aviation, Inc.) ("NetJets") or are jointly owned by NetJets and the Debtors.  Nothing in this Order grants any liens, claims, interests or encumbrances on any interests of any person other than the Debtors in the foregoing parts, wheel assemblies and other items.

24.    **Automatic Stay**.  As provided herein, subject only to the provisions of the DIP Credit Agreement and without further order from this Court, the automatic stay provisions of section 362 of the Bankruptcy Code are vacated and modified to the extent necessary to permit the DIP Agent and DIP Secured Parties to exercise, upon the occurrence and during the continuance of any Event of Default (as defined in the DIP Credit Agreement), all rights and remedies provided for in the DIP Loan Documents, and to take any or all of the following actions, so long as the DIP Agent has provided three (3) business days prior written notice to the Debtors, their bankruptcy counsel, counsel to the Committee, counsel to the respective DIP Secured Parties and Prepetition Secured Parties, and the U.S. Trustee: (a)  immediately terminate the Debtors' authority to use Cash Collateral and cease making any advances or issuing any letters of credit under the DIP Facility and to cease authorizing the use thereof; (b) declare all DIP Obligations to be immediately due and payable; (c) charge the default rate of interest provided for under the DIP Credit Agreement; (d) freeze monies or balances in the Debtors' accounts; (e) immediately set off any and all amounts in accounts maintained by the Debtors with the DIP Agent or any of the DIP Secured Parties against the DIP Obligations, or otherwise enforce rights against the DIP Collateral in the possession of any of the DIP Secured Parties for application towards the DIP Obligations; and (f) take any other actions or exercise any other

rights or remedies permitted under this Final Order, the DIP Loan Documents or applicable law to effect the repayment of the DIP Obligations. Following the giving of written notice by the DIP Agent of the occurrence of an Event of Default, the Debtors and the Committee shall be entitled to an emergency hearing before this Court solely for the purpose of contesting whether an Event of Default has occurred; provided, however, that the Court may consider these arguments or any other pertinent matters. The Debtors shall not have the right to contest the enforcement of the remedies set forth in the Interim Order, this Final Order and the DIP Loan Documents on any basis other than an assertion that no Event of Default has occurred, and, except with respect to such an assertion, no party-in-interest shall have the right to enjoin any such enforcement under section 105 of the Bankruptcy Code or otherwise, or to seek any injunctive relief inconsistent with the provisions of the Interim Order, this Final Order or the DIP Loan Documents. The rights and remedies of the DIP Agent and DIP Secured Parties specified herein are cumulative and not exclusive of any rights or remedies that the DIP Agent and the DIP Secured Parties may have under the DIP Loan Documents or otherwise. The Debtors shall cooperate fully with the DIP Agent and the DIP Secured Parties in their exercise of rights and remedies against the DIP Collateral. This Court shall retain exclusive jurisdiction to hear and resolve any disputes and enter any orders required by the provisions of this Paragraph 24 and relating to the application, re-imposition or continuance of the automatic stay as provided hereunder.

25.    **Credit Bid**.

a.    The DIP Agent, at the direction of the Required DIP Lenders, shall have the unqualified right to credit bid up to the full amount of the outstanding DIP Obligations in any sale of any DIP Collateral under or pursuant to (i) section 363 of the

Bankruptcy Code, (ii) a plan of reorganization or a plan of liquidation under section 1129 of the Bankruptcy Code, or (iii) a sale or disposition by a chapter 7 trustee for any Debtor under section 725 of the Bankruptcy Code.

b.       The Prepetition Agent, at the direction of the Required Prepetition Lenders, shall have the unqualified right to credit bid up to the full amount of any remaining Prepetition Obligations in the sale of any Prepetition Collateral subject to the satisfaction of the DIP Obligations, or as otherwise consented to by the Required DIP Lenders under or pursuant to (i) section 363 of the Bankruptcy Code, (ii) a plan of reorganization or a plan of liquidation under section 1129 of the Bankruptcy Code, or (iii) a sale or disposition by a chapter 7 trustee for any Debtor under section 725 of the Bankruptcy Code.

26.     **Binding Effect**.  Subject to Paragraph 16, the provisions of this Final Order shall be binding upon and inure to the benefit of the DIP Secured Parties, the Prepetition Secured Parties, the Debtors, the Committee, and their respective successors and assigns (including any chapter 7 or chapter 11 trustee hereafter appointed or elected for the estate of the Debtors, an examiner appointed pursuant to section 1104 of the Bankruptcy Code or any other fiduciary appointed as a legal representative of any of the Debtors or with respect to the property of the estate of any of the Debtors). To the extent permitted by applicable law, this Final Order shall bind any trustee hereafter appointed for the estate of any of the Debtors, whether in these Chapter 11 Cases or in the event of the conversion of any of the Chapter 11 Cases to a liquidation under chapter 7 of the Bankruptcy Code.  Such binding effect is an integral part of this Final Order.

27.    **Survival**.    The provisions of this Final Order and any actions taken pursuant hereto shall survive the entry of any order: (i) confirming any plan of reorganization in any of the Chapter 11 Cases (and, to the extent not satisfied in full in cash, the DIP Obligations shall not be discharged by the entry of any such order, pursuant to section 1141(d)(4) of the Bankruptcy Code, each of the Debtors having hereby waived such discharge), (ii) converting any of the Chapter 11 Cases to a chapter 7 case, or (iii) dismissing any of the Chapter 11 Cases, and the terms and provisions of this Final Order as well as the DIP Superpriority Claims and the DIP Liens in the DIP Collateral granted pursuant to the Interim Order, this Final Order and the DIP Loan Documents (and with respect to the entry of any order as set forth in clause (ii) or (iii) of this Paragraph 27, the Adequate Protection Liens and Prepetition Superpriority Claims) shall continue in full force and effect notwithstanding the entry of any such order.    Such claims and liens shall maintain their priority as provided by the Interim Order, this Final Order and the DIP Loan Documents, and to the maximum extent permitted by law, until all of the DIP Obligations are indefeasibly paid in full and discharged.    In no event shall any plan of reorganization be allowed to alter the terms of repayment of any of the DIP Obligations from those set forth in the DIP Loan Documents.

28.    **Reallocation.**    For the avoidance of doubt, in the event that it is determined by this Court after a successful Challenge, if any, by the Committee or any party in interest, that the Prepetition Secured Parties did not maintain valid, perfected and enforceable liens on the Prepetition Collateral or are otherwise undersecured, the Bankruptcy Court, after notice and hearing, reserves the right to unwind, recharacterize and reallocate any payments, or any portion thereof (which could include the disgorgement, recharacterization or reallocation of interest, fees, principal and/or other incremental consideration paid in respect thereto), including,

47

but not limited to, any fees paid to professionals employed by, or on behalf of, the Prepetition

Secured Parties) made to, or on behalf of, the Prepetition Secured Parties, including the Senior

Tranche Repayment, and modify any liens and claims granted pursuant to (i) the Interim Order

or (ii) this Final Order, including the grant of adequate protection to the Prepetition Secured

Parties.

29.    **Insurance Policies**.    The DIP Agent and DIP Secured Parties shall

immediately be, and shall be deemed to be, without any further action or notice, named as

additional insureds and loss payees, as applicable, on each insurance policy maintained by the

Debtors which in any way relates to the DIP Collateral.  The Debtors are authorized and directed

to take any actions necessary to have the DIP Agent, on behalf of the DIP Secured Parties, be

added as an additional insured and loss payee on each insurance policy.

30.    **Restriction on Use of DIP Lenders' Funds**.    None of the Debtors shall

be permitted to use the proceeds of the DIP Facility: (a) for the payment of interest and principal

with respect to any indebtedness that is subordinated to the DIP Facility except as expressly set

forth herein, (b) to finance in any way any adversary action, suit, arbitration, proceeding,

application, motion, other litigation, examination or investigation of any type relating to or in

connection with the DIP Loan Documents, including, without limitation, any challenges to the

Prepetition Obligations, or the validity, perfection, priority, or enforceability of any Prepetition

Lien securing such claims or any payment made thereunder, (c) to finance in any way any action,

suit, arbitration, proceeding, application, motion, other litigation, examination or investigation of

any type adverse to the interests of the DIP Agent and the DIP Secured Parties or their rights and

remedies under the DIP Credit Agreement, the other DIP Loan Documents, the Interim Order or

this Final Order without the prior written consent of the DIP Agent, (d) to make any distribution

48

under a plan of reorganization in any Chapter 11 Case, and (e) to make any payment in settlement of any material claim, action or proceeding, before any court, arbitrator or other governmental body without the prior written consent of the DIP Agent. Notwithstanding anything herein to the contrary, for so long as the Debtors are authorized to use the Prepetition Secured Parties' Cash Collateral with the consent of the Prepetition Secured Parties, no Cash Collateral of the Prepetition Secured Parties may be used directly or indirectly by any of the Debtors, the Committee or any other person or entity to object to or contest in any manner the Prepetition Obligations or Prepetition Liens, or to assert or prosecute any actions, claims or causes of action against any of the Prepetition Secured Parties without the consent of the applicable Prepetition Secured Parties.

      31.    **Release of Claims and Defenses**.  Each Debtor hereby releases and discharges each of the DIP Secured Parties together with their respective affiliates, agents, advisors, attorneys, officers, directors and employees (collectively, the "Released Parties"), from any and all claims and causes of action arising out of, based upon or related to, in whole or in part, any of the loans under the DIP Facility or the DIP Loan Documents, any aspect of the relationship between the Debtors, on the one hand, and any or all of the Released Parties, on the other hand, relating to any of DIP Loan Documents or any transaction contemplated thereby or any other acts or omissions by any or all of the Released Parties in connection with any of the DIP Loan Documents or their prepetition relationship with such Debtor or any affiliate thereof relating to any of the DIP Loan Documents or any transaction contemplated thereby, including, without limitation, any claims or defenses under chapter 5 of the Bankruptcy Code or any other causes of action (collectively, the "Claims and Defenses"); provided, however, that nothing in

49

this Paragraph 31 shall constitute a release of claims or causes of action against the Prepetition

Secured Parties in their capacity as such.

32.    **Protection Under Section 364(e)**.  To the extent provided for and as set

forth in section 364(e) of the Bankruptcy Code, if any or all of the provisions of this Final Order

are hereafter reversed, modified, vacated or stayed, such reversal, modification, vacation or stay

shall not affect the (i) validity of any DIP Obligations or Adequate Protection Obligations owing

to the DIP Secured Parties or the Prepetition Secured Parties incurred prior to the actual receipt

by the DIP Agent or the Prepetition Agent, as applicable, of written notice of the effective date

of such reversal, modification, vacation or stay, or (ii) validity or enforceability of any claim,

lien, security interest or priority authorized or created hereby or pursuant to the Interim Order or

the  DIP  Loan  Documents  with  respect  to  any  DIP  Obligations  or  Adequate  Protection

Obligations  owing  to  the  Prepetition  Secured  Parties.    Notwithstanding  any  such  reversal,

modification, vacation or stay, any use of Cash Collateral or the incurrence of DIP Obligations,

or  Adequate  Protection  Obligations  owing  to  the  Prepetition  Secured  Parties,  by  the  Debtors

prior to the actual receipt by the DIP Agent or the Prepetition Agent, as applicable, of written

notice of the effective date of such reversal, modification, vacation or stay, shall be governed in

all respects by the provisions of the Interim Order and this Final Order, and the Prepetition

Secured Parties shall be entitled to all of the rights, remedies, protections and benefits granted

under section 364(e) of the Bankruptcy Code, the Interim Order, this Final Order and the DIP

Loan  Documents  with  respect  to  all  uses  of  Cash  Collateral  and  the  incurrence  of  DIP

Obligations, and Adequate Protection Obligations owing to the Prepetition Secured Parties.

33.    **Effect of Dismissal of Chapter 11 Cases**.  If any of the Chapter 11 Cases

is dismissed, converted or substantively consolidated, such dismissal, conversion or substantive

consolidation of these Chapter 11 Cases shall not affect the rights of the DIP Secured Parties or the Prepetition Secured Parties under their respective DIP Loan Documents, Prepetition Loan Documents, the Interim Order or this Final Order, and all of the respective rights and remedies thereunder of the DIP Secured Parties and Prepetition Secured Parties shall remain in full force and effect as if the Chapter 11 Cases had not been dismissed, converted, or substantively consolidated.  If an order dismissing any of the Chapter 11 Cases is at any time entered, such order shall provide (in accordance with Sections 105 and 349 of the Bankruptcy Code) that: (i) the DIP Liens and DIP Superpriority Claims granted to and conferred upon the DIP Agent and DIP Secured Parties and the protections afforded to the DIP Agent and the DIP Secured Parties pursuant to the Interim Order, this Final Order and the DIP Loan Documents shall continue in full force and effect and shall maintain their priorities as provided in the Interim Order and this Final Order until all DIP Obligations shall have been paid and satisfied in full (and that such DIP Liens, DIP Superpriority Claims and other protections shall, notwithstanding such dismissal, remain binding on all interested parties); (ii) subject to Paragraph 16 herein, those primed or unprimed (as the case may be) Prepetition Liens, Adequate Protection Liens and Prepetition Superpriority Claims granted to and conferred upon the Prepetition Secured Parties, as applicable, shall continue in full force and effect and shall maintain their priorities as provided in the Interim Order and this Final Order until all Prepetition Indebtedness shall have been paid and satisfied in full (and that such Prepetition Superpriority Claims shall, notwithstanding such dismissal, remain binding on all interested parties); and (iii) to the greatest extent permitted by applicable law, this Court shall retain jurisdiction, notwithstanding such dismissal, for the purpose of enforcing the DIP Liens, Prepetition Liens, Adequate Protection Liens, DIP Superpriority Claims and Prepetition Superpriority Claims referred to herein.

34.   **Choice of Law; Jurisdiction**.   The DIP Facility and the DIP Loan Documents (and the rights and obligations of the parties thereto) shall be governed by, and construed and interpreted in accordance with, the laws of the State of New York, including, without limitation, Sections 5-1401 and 5-1402 of the New York General Obligations Law, and, to the extent applicable, the Bankruptcy Code.   The Bankruptcy Court shall have exclusive jurisdiction with respect to any and all disputes or matters under, or arising out of or in connection with, either the DIP Facility or the DIP Loan Documents.

35.   **Order Effective**.   This Final Order shall be effective as of the date of the signature by the Court.

36.   **No Requirement to Accept Title to Collateral**. Neither the DIP Secured Parties nor the Prepetition Secured Parties shall be obligated to accept title to any portion of the Prepetition Collateral or DIP Collateral in payment of the indebtedness owed to such party by the Debtors, in lieu of payment in cash or cash equivalents, nor shall any of the DIP Secured Parties nor Prepetition Secured Parties be obligated to accept payment in cash or cash equivalents that is encumbered by any interest of any person or entity other than the DIP Secured Parties.

37.   **Controlling Effect of Final Order**.   Except as expressly modified or superseded by this Final Order, the Interim Order shall continue in full force and effect notwithstanding entry of this Final Order.   To the extent any provision of this Final Order conflicts or is inconsistent with any provision of the Interim Order, the Motion, any prepetition agreement or any DIP Loan Document, the provisions of this Final Order shall control to the extent of such conflict.

Dated:   June 1st, 2012                   /s/ STUART M. BERNSTEIN
         New York, New York              STUART M. BERNSTEIN
                                          United States Bankruptcy Judge