UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------------------------------X
In re:                                                                :
                                                                          :
HAWKER BEECHCRAFT, INC., *et al.*,            :    Chapter 11
                                                                          :    Case No. 12-11873 (SMB)
                        Debtors.                             :    Jointly administered
----------------------------------------------------------------X

## MEMORANDUM DECISION DENYING REQUEST FOR CONTINUANCE AND EXPUNGING ADMINISTRATIVE CLAIMS

**A P P E A R A N C E S:**

KIRKLAND & ELLIS LLP
*Attorneys for Reorganized Debtors*
601 Lexington Avenue
New York, NY 10022

>James H.M. Sprayregen, Esq.
>Paul M. Basta, Esq.
>Patrick J. Nash, Jr., Esq.
>Ross M. Kwasteniet, Esq.
>    Of Counsel

AKIN GUMP STRAUSS HAUER & FELD LLP
*Attorneys for the Post-Effective Date Committee*
  *of Unsecured Creditors*
One Bryant Park
New York, New York 10036

>David H. Botter, Esq.
>    Of Counsel

CHENG Shenzong
Chairman and CEO
Superior Aviation Beijing Co., Inc.
No. 11, Jinghai 3 Road
Beijing Economic-Technological Development Area
Beijing 100076
Email: corporate@sabj.cn

**STUART M. BERNSTEIN**
**United States Bankruptcy Judge:**

The reorganized debtors (collectively "Hawker") have objected to four administrative claims, each in the sum of $50 million, filed by Superior Aviation Beijing Co., Inc. ("Superior"). (*Reorganized Debtors' Objection to Proofs of Claim Numbered 2805, 2818, 2851, and 2852 Asserting Administrative Claims Filed by Superior Aviation Beijing Co., Ltd.*, dated Aug. 15, 2013 ("*Hawker Objection*") (ECF Doc. # 1571).) After receiving a thirty-day continuance to file a response, Superior now seeks an additional ninety days. Hawker opposes the request. For the reasons that follow, the request for a continuance is denied, and the claim objection is sustained.

## BACKGROUND

The material facts are not disputed. At all relevant times, Hawker was engaged in the manufacture, sale and servicing of jet and non-jet aircraft. Hawker filed a chapter 11 petition in this Court on May 3, 2012. During the bankruptcy, Hawker simultaneously pursued two exit strategies: a Standalone Transaction under which all prepetition funded debt claims would be converted into equity and a Third Party Transaction that contemplated a sale of substantially all of Hawker's assets. Importantly, Hawker intended to discontinue its jet business if it could not sell it as part of an asset sale to a third-party.

Following an extensive marketing process, Hawker decided to pursue the possibility of a Third Party Transaction with Superior (the "Proposed Transaction"). The parties entered into two letter agreements that are central to the current dispute. Both were governed by New York law, without regard to New York's conflicts of laws principles. Under the *Exclusivity Agreement*, dated July 6, 2012, Superior tentatively agreed to pay $1.79 billion for Hawker's

assets, and Hawker agreed to negotiate with Superior exclusively for a short period of time.[1] Superior agreed to pay Hawker $50 million (the "Payment") "[a]s consideration to induce the Company to enter into this letter agreement and to induce the Company to (a) continue to operate its jets business, (b) discontinue its negotiations with other interested purchasers of all or a portion of the Company's business assets, and (c) expend significant effort and incur substantial time and expense to pursue the Proposed Transaction." (*Exclusivity Agreement* at ¶ 3.) Superior acknowledged that the $50 million was intended, among other things, to compensate Hawker for the costs and expenses of preserving and keeping its jet business open and operational during the implementation of the Proposed Transaction (the "Hawker Preservation Expenses"). (*Id.*) If the parties consummated the Proposed Transaction, the $50 million payment would be credited against the purchase price. (*Id.*) Finally, the *Exclusivity Agreement* provided that, if it was terminated in accordance with its terms or Superior determined in its "sole and absolute discretion that the Proposed Transaction is not likely to be consummated, then, in either case, upon delivery or receipt by (as applicable) [Hawker] of a written notice (the 'Termination Notice'), [Hawker] shall cause to be refunded . . . to [Superior] that portion of the Payment (if any) in excess of the Hawker Preservation Expenses incurred as of the date of the delivery of the Termination Notice as agreed to by [Hawker] and [Superior] (the 'Refund Amount')." (*Id.*)

The second agreement, the *Refund Agreement*, dated July 6, 2012, liquidated the Refund Amount based on the date of termination.[2] Its declared purpose was to eliminate the need to calculate the actual amount of the Hawker Preservation Expenses. (*See Refund Agreement* at pg.

---

[1] A copy of the *Exclusivity Agreement* is annexed as Exhibit C to the *Hawker Objection*, at pp. 140-47 of 222.

[2] A copy of the *Refund Agreement* is annexed as Exhibit D to the *Hawker Objection*, at pp. 151-155 of 222.

3

151 of 222 ("The calculation of the Refund Amount pursuant to this letter includes the calculation and determination of the Hawker Preservation Expenses, and no further calculation or determination of the Hawker Preservation Expenses shall be made for any purposes of the Exclusivity Agreement.").) The Refund Amount decreased over time, reflecting the fact that the Hawker Exclusivity Expenses simultaneously increased while Hawker negotiated exclusively with Superior and continued to operate the jet business that Superior might want to buy and Hawker otherwise intended to close. For example, if the Termination Notice was sent (or received) after July 6, 2012 but before July 13, 2012, Hawker had to refund $42 million. If the Termination Notice was sent or received after that date, the Refund Amount became progressively smaller. If the Proposed Transaction was terminated after October 19, 2012, "the Refund Amount shall be deemed to be zero." (*Refund Agreement*, Ex. A.)

Hawker thereafter moved for approval of the exclusivity arrangement with Superior. The Court granted the motion on July 17, 2012 based on Superior's agreement to pay the $50 million, which the Court characterized as an "option price." (*See* Transcript of hearing, held July 17, 2012, at 54-55 (ECF Doc. # 377).)[3] The parties subsequently negotiated but could not reach a definitive agreement. Hawker issued a press release on October 18, 2012 to the effect that it was no longer pursuing the Proposed Transaction, and five days later, on October 23, 2012, Superior sent a Termination Notice and demanded a refund of the $50 million Payment with accrued interest.[4]

---

[3]    A copy of the transcript is annexed as Exhibit E to the *Hawker Objection*, at pp. 157-213 of 222.

[4]    A copy of the Termination Notice and Hawker's response are annexed, respectively, as Exhibit F (pp. 215-18 of 222) and Exhibit G (pp. 220-21 of 222) to the *Hawker Objection*.

Thereafter, on or about March 14, 2013, Superior filed four apparently identical requests for payment of administrative claims, numbered 2805, 2818, 2851 and 2852. (*Hawker Objection*, Ex. B, pp. 21-137 of 222.) The requests sought $50 million as an administrative expense on the theory that the "$50 million played a positive role in preserving [Hawker's] jets business, which is part of the Debtors' estate, and therefore benefit [*sic*] the Debtor' estate." (*Hawker Objection*, at pp. 23, 59, 95, 118 of 222.) Hawker filed the *Hawker Objection* on August 15, 2013, arguing that Superior did not hold a claim let alone an administrative claim, and failed to file its claims in accordance with the procedures established by the Court. The post-confirmation creditors committee joined in the objection. (*Joinder of the Post-Effective Date Committee of Unsecured Creditors of Hawker Beechcraft, Inc., et al., to Reorganized Debtors' Objection to Proofs of Claim Number 2805, 2818, 2851, and 2852 Asserting Administrative Claims Filed by Superior Aviation Beijing Co., Ltd.*, dated Sept. 13, 2013 (ECF Doc. # 1588).)

The hearing on the *Hawker Objection* took place on September 19, 2013, but before then, Superior encountered a "disagreement" with its attorneys. Superior had been represented during the Proposed Transaction by Locke Lord LLP, a firm with offices in Chicago, New Orleans and New York. The Court had approved the admission *pro hac vice* of several of the firm's attorneys who were admitted only in other jurisdictions, (*see* ECF Doc. ## 428, 429, 430), and Locke Lord LLP filed a notice of appearance on behalf of Superior, signed by an attorney in the New York office. (ECF Doc. # 431.) Notably, Superior's Chairman and CEO signed the Termination Notice and demand for the return of the $50 million, but Locke Lord did not.

On September 5, 2013, Steven S. Honigman, Esq., filed a notice of appearance on behalf of Superior. (ECF Doc. # 1579.) In addition, Lisa Wolgast, Esq. of Morris, Manning & Martin,

LLP, an Atlanta firm, filed a motion for admission *pro hac vice* to represent Superior, (ECF Doc. # 1580), and the Court approved her retention by order dated September 6, 2013. (ECF Doc. # 1581.) On September 11, 2013, Honigman wrote to the Court, with Hawker's consent, requesting a one-day extension of the time, from September 12 to September 13, to file Superior's response to the *Hawker Objection*. The Court endorsed the email granting the extension. (ECF Doc. # 1587.)

Honigman did not submit Superior's response.[5] Instead, on September 13, 2013, the due date, Honigman and Wolgast submitted what appeared to be an *ex parte* motion for leave to withdraw as counsel for Superior "because of a material disagreement with Superior about the subject matter of the representation." (ECF Doc. # 1590.) The motion did not include a return date, and the movants did not file an affidavit of service indicating that the motion had been sent to Superior or anyone else. Consequently, the Court did not approve it.

Returning to the September 19 hearing on the *Hawker Objection*, neither Honigman nor Wolgast nor anyone from Locke Lord appeared on behalf of Superior. Instead, Superior was represented at the hearing by James F. Adams, Esq. of Passman & Jones, PC, a Dallas firm. He was accompanied by two attorneys from China. Adams had been contacted earlier in the week by one of his clients, Superior Air Parts, who he believed was an affiliate of Superior. (Transcript of hearing, held Sept. 19, 2013, at 6 (ECF Doc. # 1601.) Adams sought a continuance. He explained that Superior was at a disadvantage because it was located abroad,

---

[5]     Superior submitted a *pro se* response on or about September 12, 2013. (*See* ECF Doc. # 1635.) It reiterated the theory argued in the Termination Notice and the proofs of claim that the Payment had benefited the estate.

lacked familiarity with the bankruptcy process, and was attempting to retain new local counsel.

(*Id.* at 7-8.) The following colloquy then took place:

> THE COURT: I understand that. I'm just asking how long is this going to go on, that's all.
>
> MR. ADAMS: Thirty -- thirty days.
>
> THE COURT: So you want an adjournment for thirty days?
>
> MR. ADAMS: Correct, your Honor.
>
> THE COURT: How about if I do this? I'll give you thirty days to file a response, and then I'll just deem the matter submitted.
>
> MR. ADAMS: That's fine, Your Honor.

(*Id.* at 8.)

One day later, Honigman and Wolgast submitted a stipulation signed by Superior in which Superior agreed that they could withdraw as its counsel "for reason of a material disagreement about the subject matter of the representation." (ECF Doc. # 1606.) The Court approved the stipulation on September 23, 2013. (ECF Doc. # 1607.)

Any further Superior response to the *Hawker Objection* was due on October 18, 2013. Three days before the deadline, Superior sent an application for a ninety-day adjournment signed by its Chairman and CEO. Superior contended that it was difficult for a Chinese company unfamiliar with the laws and legal profession in the United States to find qualified U.S. counsel, language and time zone differences exacerbated the problem, Superior was unable to get the transaction documents, materials and information from its U.S. advisors, and given the complexity of the case, U.S. counsel will need a reasonable amount of time to know about the case, collect the relevant evidence and then prepare Superior's response. (ECF Doc. # 1624-1.)

7

Hawker opposed the continuance, suggesting that Superior was having trouble hiring and/or keeping U.S. counsel because its position was frivolous and risked sanctions. Hawker observed that Superior had been represented by sophisticated U.S. counsel in connection with the Proposed Transaction, but counsel had not signed the Termination Notice that demanded the return of the Payment. (*Reorganized Debtors' Response to the Application for Ninety More Days to File Superior's Response to the Reorganized Debtors' Objection to Proofs of Claim Numbered 2805, 2818, 2851, and 2852 Asserting Administrative Claims Filed by Superior Aviation Beijing Co., Ltd.*, dated Oct. 22, 2013, at ¶ 2 (ECF Doc. # 1631).) Wolgast of Morris, Manning & Martin, LLP (as well as Honigman), had filed a notice of appearance but sought to withdraw eight days later because of "a material disagreement with Superior about the subject matter of the representation." (*Id.* at ¶ 3.) Superior's real problem was "that an order of this Court provides that the $50 million deposit belongs to the Debtors, and any U.S. law firm would risk Rule 11 sanctions for arguing Superior's position. Granting Superior another 90 days to locate counsel and respond will not change this reality." (*Id.* at ¶ 4 (footnote omitted).)

Hawker also took issue with Superior's argument that language differences, time zone differences, complexity or any other factor cited by Superior contributed to its difficulty in retaining U.S. counsel. Superior had retained U.S. counsel to represent it in connection with the Proposed Transaction and had separately retained counsel, who subsequently withdrew, to oppose the objection. (*Id.* at ¶ 5.) Furthermore, "approximately 69 of the American Lawyer 100 Law Firms [maintained] offices in Beijing, Shanghai, or Hong Kong." (*Id.*) Finally, neither the need to amass evidence nor the time to gain familiarity with the matter merited a continuance. The case turned on two documents: the *Exclusivity Agreement* and *Refund Agreement*. (*See id.* at ¶ 6.)

8

## DISCUSSION

### A.  Request for a Continuance

The decision whether to grant an adjournment or continuance is committed to the discretion of the Court.  *United States v. O'Connor*, 650 F.3d 839, 854 (2d Cir. 2011).  Here, the Court declines to continue this matter for ninety days or any other period.  First, the Court already granted a thirty-day adjournment requested by Adams who advised the Court that thirty days would be sufficient.  Second, Superior never satisfactorily explained why it was having so much difficulty retaining a lawyer in the United States.  It had retained U.S. lawyers in the past, a great deal of money was at stake in the current dispute, I assume Superior could afford to pay counsel since it had funded the $50 million in the first place, and as Hawker argued, there are a substantial number of large U.S. firms that maintain offices in China.  Third, the dispute was not complex, and its resolution depended on reading two letter agreements totaling less than ten pages of text.

I suspect, as Hawker suggests, that no U.S. lawyer would risk filing papers that take the position advocated by Superior.  As discussed in the next section of this decision, the disposition of the objection is governed by the parties' unambiguous letter agreements, and there is no basis in bankruptcy law to argue that Superior is entitled to an administrative claim in the amount of the Payment.  No Superior attorney—not Honigman, not Wolgast, not Adams, not Locke Lord— has ever suggested a theory that would support Superior's administrative claim, and I suspect that Hawker is right that another ninety days isn't going to make a difference.  For these reasons, I am not inclined to indulge Superior's request for another, ninety-day continuance, and its request is denied.

**B.     The Disposition of the Objection**

Under New York law, "a written agreement that is clear, complete and subject to only one reasonable interpretation must be enforced according to the plain meaning of the language chosen by the contracting parties." *Brad H. v. City of New York*, 951 N.E.2d 743, 746 (N.Y. 2011). The *Exclusivity Agreement* and the *Refund Agreement* are governed by New York law, and read together, are clear and unambiguous. Superior agreed to pay $50 million as consideration to induce Hawker to negotiate exclusively with Superior, continue to operate the jet business during those negotiations and expend the time and effort to pursue the Proposed Transaction. Hawker was obligated to refund a portion of the $50 million if a Termination Notice was delivered (or received) prior to October 19, 2012. Superior terminated the Proposed Transaction after October 19, 2012, it is not entitled to a refund under the clear and unambiguous terms of the *Exclusivity Agreement* and the *Refund Agreement*, and hence, it has no claim.

Moreover, while it is true that the $50 million payment conferred a benefit on the estate, the argument misses the point. As the Court observed when it approved the exclusivity arrangement, Superior essentially paid $50 million for an exclusive option to enter into a definitive agreement with Hawker to buy substantially all of its assets, including a jet business that Hawker was inclined to discontinue. It received the benefit of its bargain and has not argued otherwise. Superior is in the same position as a customer that buys goods or services from a chapter 11 debtor. The customer's payment undoubtedly benefits the estate but does not transform the customer into a creditor or give him a claim against the estate in the amount of the payment.

Here, too, Superior paid consideration and received consideration from Hawker. Its $50 million payment benefited the estate but reflected an exchange for value. Superior got what it

10

paid for, and that is all it is entitled to get.  Accordingly, Superior is not a creditor much less an administrative creditor, its request for payment of its administrative claims is denied, and Hawker's objection is sustained.  In light of this conclusion, it is not necessary to consider Hawker's argument that Superior failed to file its claims in accordance with the procedures established by the Court.

      Submit order.

Dated: New York, New York
       October 25, 2013

                              /s/ *Stuart M. Bernstein*
                              STUART M. BERNSTEIN
                          United States Bankruptcy Judge